## State of Vermont v. Roger Blackburn

[643 A.2d 224]

No. 92-192

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed May 14, 1993

Motion for Reargument Denied May 3, 1994

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*E.M. Allen*, Defender General, and *William Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Morse, J.** Roger Blackburn was convicted of lewd and lascivious conduct with a child. See 13 V.S.A. § 2602. He appeals his conviction on the ground that hearsay statements made by the child to a Social and Rehabilitation Services (SRS) caseworker and a police officer were not admissible under V.R.E. 804a because taken in "preparation for a legal proceeding." We affirm.

Defendant is the father of the victim, who was two-and-a-half years old at the time of the crime. After defendant's marriage failed, the child resided with her mother. Defendant was allowed frequent visitation with his daughter. During the post-separation period, the parents fought.

Defendant was the first to express concern about the child's behavior and development, particularly her toilet training, bottle feeding, and other supposed effects of the separation, and he brought her to a child therapist. The therapist met twice with the child with a different parent present at each interview. She found that the child was unusually articulate with a relatively long attention span, was developmentally advanced, and was "very much her own person." She concluded that the child was "doing very well" and that the parents, with whom she met jointly, should not be concerned about her adjustment to her parents' separation.

Shortly thereafter, the mother reported that the child was having nightmares and resisting her diapers being changed by anyone other than her mother. She became reluctant to visit with her father. When asked by mother if anyone had hurt her, the child answered that her father had. The babysitter also reported difficulty in changing the child's diapers, and said that the child had told her that a Mickey Mouse puppet would remove her clothes while she was visiting father. She described a game called "naked girl" which she and her father would play. The therapist reported suspected child abuse to SRS.

SRS began an investigation. Caseworker Patricia Quinney interviewed the child on four occasions. The first time Quinney conducted the interview with the child and mother at their home. The following visit, the child utilized a puppet to show them the "naked girl" game she said she played with her father, and that during the game both she and her father were naked. She described defendant touching her genitals, rubbing his penis against her, and rubbing his nose against her vagina. Quinney reported the situation to the police.

Quinney brought Sergeant Joseph Pineau of the Brattleboro Police Department to the next interview because she believed that the statements concerning the abuse "had to be stated in front of a police officer . . . . [T]hey had to hear it from her, not from me." On that occasion, the child showed Quinney and Pineau what happened to her using anatomically correct dolls, and simulated intercourse between the two dolls. Otherwise, the child did not reveal anything relevant to the investigation except when asked if she knew the difference between truth and falsehood. They believed she had not been coached and was telling the truth. The trial court characterized the meeting as "fairly unproductive."

The final interview took place at the police station. Both Quinney and Pineau were present, as well as a female police officer. The interview was videotaped. The first portion of the interview was characterized as "unproductive," just as the third interview had largely been. During a break in the interview, however, the child spontaneously told Pineau details of the sexual contact by defendant and, spreading her legs to illustrate, told him that defendant touched her vagina with his hands and his penis. Pineau then obtained a search warrant for defendant's apartment, where a Mickey Mouse puppet and child's crown were seized. Defendant was charged with lewd and lascivious conduct with a child.

By pretrial motion, the prosecution filed notice of intent to use the child's hearsay statements under V.R.E. 804a. Rule 804a allows statements by a child ten years of age or younger to be admitted in a prosecution for lewd and lascivious conduct where the court determines that (1) the child is a putative victim of lewd or lascivious conduct and the statement relates to the crime; (2) "the statements were not taken in preparation for a legal proceeding" or made prior to a defendant's V.R.Cr.P. 5 proceeding; (3) the child is available to testify; and (4) "the time, content and circumstances of the statements provide substantial indicia of trustworthiness." V.R.E. 804a(a)(1)–(4). Defendant objected, claiming, in part, that the videotaped statements

at the police station were made in "preparation for a legal proceeding," contrary to V.R.E. 804a(a)(2). The State prevailed.

At trial, the jury was shown the videotape of the police station interview and told the substance of the other interviews. Defendant testified, denying the charges. He said he did not undress in front of the child or touch her in a sexual manner. He testified that he used the Mickey Mouse puppet during diapering as a game, and would tickle her and nuzzle her, and sometimes give her "raspberries" during diaper changing. The "naked girl" game, according to him, was simply the child dancing and running around after a diaper change, singing "I'm a naked girl." Defendant was nevertheless convicted.

The only issue on appeal is whether the child's statements with a police officer present, especially the one videotaped at the police station, were "taken in preparation for a legal proceeding" under subsection (2) of Rule 804a(a). Defendant argues that because the substance of the suspected abuse had already been confirmed during the first several interviews, the primary purpose of the final interviews was to confirm the child's account and to preserve it on videotape, the sole use of which was to show the jury at trial.

We have previously determined that institution of an SRS investigation does not necessarily trigger the commencement of legal proceedings, even though the investigation often results in criminal charges against an accused. *State v. Duffy*, 158 Vt. 170, 172, 605 A.2d 533, 534–35 (1992). Moreover, more than one interview does not necessarily mean that more recent interviews are "in preparation for a legal proceeding." Cf. *In re M.B.*, 158 Vt. 63, 68, 605 A.2d 515, 518 (1992) (upholding finding that three interviews by SRS were conducted for investigatory purposes). SRS involvement in such investigations is not primarily to gather evidence to incriminate or exonerate a suspect, but to protect the child. *State v. Duffy*, 158 Vt. at 172, 605 A.2d at 535.

We recognize that the more interviews conducted, the line separating what constitutes investigation from what constitutes trial preparation becomes increasingly ill-defined and difficult to draw. Rather than draw a hard and fast line, the factual circumstances as interpreted by the trial court must govern and will not be disturbed on appeal unless clearly erroneous. *State v. Zaccaro*, 154 Vt. 83, 86, 574 A.2d 1256, 1258 (1990). We must be careful not to interpret the "preparation" language too narrowly or too broadly. If read too broadly, every factual inquiry would be in preparation for legal proceedings and the rule would never be invoked. On the other hand,

too narrow a view would permit investigators to conduct interviews until satisfied nothing was left to do in preparation for trial. Either interpretation would strip the rule of its intended purpose.

The difficulty in determining when child hearsay testimony may properly be used at trial is illustrated by the legislative history underlying the law. Initially promulgated as V.R.E. 803(24), the rule was intended "to safeguard the right of confrontation while at the same time curing the frequent problem of lack of corroboration caused by the traditional hearsay rules." Reporter's Notes to V.R.E. 804a. As the bill progressed through the legislative process, it first required that child hearsay originate solely before arraignment. At one point, the wording was altered by requiring that the statements be made to someone other than a police officer or social worker investigating the alleged abuse. The language ended up requiring that hearsay not be "taken in preparation for a legal proceeding" or taken before arraignment.

Although the State argues that the legislature could have specifically excluded statements made to a police officer or a social worker, or limited the admissible hearsay testimony to the initial disclosure only, we are not convinced that argument gets us very far in deciding this case. The rule necessitates a certain degree of flexibility. Often the motives for interviewing a child are mixed. It then becomes a matter of weighing the motives. Where the child's testimony against a potential defendant is clear and consistent and further interviews simply repeat or preserve what has already been said, the only reasonable view may be that preparing legal proceedings was the primary focus.

We hold that the proper inquiry under V.R.E. 804a(a)(2) to determine if the child's statements are "taken in preparation for a legal proceeding" is whether an objective view of the totality of the circumstances indicates that the statements were gathered primarily for reasons other than preparation for a legal proceeding. If so, subpart (2) is satisfied. If not, the child hearsay is not admissible.

Here, the trial court determined that the videotaped interview, as the interviews before it, occurred while the case was still in the investigatory stage. We conclude that the court's finding that the child's statements at the police station were not "taken in preparation for a legal proceeding" is supported by the evidence. It was reasonable to have the police investigate directly and not base criminal action on SRS's merely telling the police about the child's statements.

Pineau testified that he thought the several interviews at the child's home were "nothing that we could base a case on" and, along with Quinney, decided to "change the atmosphere of the interview" in the hope that the child would talk more.

*Affirmed.*