## State of Vermont v. Robert Lawton

[667 A.2d 50]

No. 93-098

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 1, 1995

---

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, Appellate Counsel for Plaintiff-Appellee.

*James W. Murdoch, Kurt M. Hughes* and *Heather Rylant*, Legal Assistant (On the Brief), of *Murdoch & Hughes*, Burlington, for Defendant-Appellant.

**Johnson, J.** Rarely are we compelled to reverse a verdict of guilty because the trial judge failed to control an overzealous prosecutor, but this is such a case. The improper admission of numerous bad acts allegedly committed by defendant, punctuated with improper prosecutorial comments about defendant's character, were potentially so damaging that we cannot conclude that the verdict against defendant was untainted by such evidence.

Defendant was charged with three counts of sexual assault on his three sons, G.L., aged seven years, D.L., aged five years, and B.L., aged three years. The State alleged the offenses took place between January 1990 and February 1991 while defendant lived with his family in Williston, Vermont. All three boys testified at trial, but B.L., the youngest, was unwilling to talk about what had happened to him. B.L.'s story was told through his mother and the police officer who interviewed him. Although B.L.'s story was less specific than the older children's description, the gist of the children's stories was that defendant had sodomized them on several occasions.

The children's description of the sexual conduct was consistent with the findings of Dr. Paul Young, the State's medical expert, who had examined the boys and found physical abnormalities consistent with a history of rectal penetration by an object the size of an adult penis. Although the physical examination of the boys revealed a difference in severity of abnormality, Dr. Young concluded that the most likely explanation for the rectal injuries in all three boys was "sexual abuse, repeated sodomy, anal intercourse."

Defendant testified in his own defense. His theory of the case was that his wife had accused him of sexual abuse of the children in retaliation for an affair he was conducting with another woman, and that his wife had coerced the children to testify. He presented expert testimony contending that the children had been improperly manipulated by various interviewers. His explanation for the physical evidence found by Dr. Young was that the children were engaging in sexualized play with each other and with children in the neighborhood.

The central issues for the jury, then, should have been the children's credibility and the reliability of B.L.'s account of the abuse, as related through his mother and the police officer, the persuasiveness of the medical and other expert testimony, and defendant's credibility. The State, however, shifted the focus of the trial to defendant's character. Thus, we first discuss defendant's two related assignments of error, that the admission of numerous bad acts

combined with improper prosecutorial commentary deprived him of a fair trial.

## I.

In criminal cases, prosecutors have a duty to obtain convictions "earnestly and vigorously through legitimate means and methods." *State v. Verrinder*, 161 Vt. 250, 261, 637 A.2d 1382, 1389 (1993). They also have a "corresponding duty to refrain from improper methods calculated to produce a wrongful conviction and to guard against conduct unintentionally trespassing the bounds of propriety." *State v. Lapham*, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977). A prosecutor must avoid appealing to the prejudices of the jury or relying on improperly drawn inferences. *Id.*

Prosecutors are not without guidelines as to what is fair play in the context of a criminal trial. At a minimum, they must make a good faith effort to comply with the Vermont Rules of Evidence. The Rules provide that evidence of prior bad acts may not be admitted "to prove the character of a person in order to show that he acted in conformity therewith." V.R.E. 404(b); *State v. Jones*, 160 Vt. 440, 444, 631 A.2d 840, 844 (1993). When used to show character, admission of prior bad acts presents a significant danger of unfair prejudice and confusion, creating the distinct possibility that the jury will convict a defendant of the charged crime solely because he has committed other crimes or acts. *State v. Bruyette*, 158 Vt. 21, 27, 604 A.2d 1270, 1272 (1992). Such evidence may be introduced only if it is relevant to some other legitimate issue in the case, such as motive, plan or identity. V.R.E. 404(b); *State v. Winter*, 162 Vt. 388, 392, 648 A.2d 624, 626 (1994). Even if relevant, however, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. V.R.E. 403; *State v. Ashley*, 160 Vt. 125, 126, 623 A.2d 984, 985 (1993). On appeal, we will reverse the trial court's decision to admit this evidence only if the court withheld or abused its discretion and the error was not harmless. *State v. Kelley*, 163 Vt. 325, 328, 664 A.2d 708, 710 (1995).

## A.

The principal ground for reversal in this case lies in the prosecutor's cross-examination of defendant. It is replete with prior bad acts and improper commentary designed to compel the jury's conclusion that defendant was a person of bad character. The intended inference

was that a person of such character is likely to have committed the acts charged and should be convicted. All of the acts introduced were highly prejudicial and of marginal or no relevance to the factual issues before the jury.

The prosecutor questioned defendant about having anal intercourse with his wife, and asked whether he enjoyed anal intercourse. She asked him if he had been caught in a compromising position with another man, which she described, implying that defendant had engaged in homosexual acts. She then questioned defendant about how much he liked to have sex and proceeded through a laundry list of names of adults with whom he had allegedly had sexual relations. She asked if defendant had been drunk and on drugs when his daughter was born, implying that he was unable to go to his daughter's birth because he was under the influence. She asked whether defendant was in bed with another woman when his wife returned home from the hospital after the birth.

■ The State makes various attempts to justify the admission of these incidents. It argues that evidence regarding anal intercourse with defendant's wife should be admitted because it is probative of defendant's specific method of performing anal sex — digital penetration as a prelude to anal intercourse — to identify defendant as the children's abuser. Such evidence, however, "must be so distinctive, in effect, [as] to constitute the defendant's signature." *Bruyette*, 158 Vt. at 27, 604 A.2d at 1273. We do not believe that the evidence in this case satisfies the high threshold established in *Bruyette*, and the evidence was relevant to no other purpose.

In the same vein, the prosecutor attempted to ask defendant about whether he had been caught engaging in anal intercourse with an adult male friend. Although the prosecutor then withdrew the question, the damage was done. The judge did not instruct the jury to disregard the question. The implication was before the jury and, because defendant did not have the opportunity to answer the question and there was no instruction to disregard the question, there was potential prejudice to defendant by implying an allegation of homosexuality. See *United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989) (questions themselves may be prejudicial if intended solely to place improper matters before jury), *cert. denied*, 493 U.S. 1080 (1990).

■ ■ The State argues that defendant opened the door on the evidence about defendant's many extramarital affairs and defendant's

alcohol and drug use because, in his opening statement, he mentioned that the couple had lived the "California lifestyle," which included the use of alcohol and drugs. The State argues an overly broad position on the open door policy. See *State v. Recor*, 150 Vt. 40, 44, 549 A.2d 1382, 1386 (1988) (Rule 404(b) not license "for the prosecutor to engage in 'overkill' nominally justified by the defendant's actions in raising a line of questions"). While we agree that defendant initially raised these issues, this did not give the State license to introduce additional evidence on the same matters unless it was intended to contradict or rebut the testimony of defendant. See *id.* at 44, 549 A.2d at 1386 (evidence of prior assault on same victim properly admitted after defendant tried to impeach victim with incomplete picture of unwarranted bias); *United States v. Beverly*, 5 F.3d 633, 640 (2d Cir. 1993) (evidence of prior shootings properly admitted to rebut defendant's testimony that he was unfamiliar with use of guns); *United States v. Carter*, 953 F.2d 1449, 1456–57 (5th Cir.), *cert. denied*, 504 U.S. 990 (1992) (defendant's prior conviction and time served admissible to rebut defendant's claim of continuous employment). Instead, the State improperly used the prior bad acts as cumulative evidence of defendant's propensities.

The prosecutor also made inappropriate comments during the cross-examination by interjecting her personal opinion of defendant's character and credibility. She commented that defendant "had a lot of practice lying." She stated, "Funny how everywhere you go, children, especially young boys, start sexually acting out." When defendant stated he did not have time for extramarital affairs, she retorted that he was meeting his sexual needs at home. Finally, the prosecutor ended her questioning with the statement, "I think that there's one statement that you made that's true, that even if you were guilty, you'd deny it until your dying day."

Prosecutors may not indicate a personal belief that defendant is guilty because there is a great risk that the jury will give special weight to their opinion. *State v. Ayers*, 148 Vt. 421, 425, 535 A.2d 330, 333 (1987); see also Code of Professional Responsibility DR 7-106(C)(4) (lawyer shall not assert personal opinion as to witness's credibility or defendant's guilt). Whether improper comment by the prosecutor requires reversal depends on such factors as the blatancy of the expression, the impact on the theory of the defense, persistence and frequency of expression, the opportunity and potential for the court to minimize prejudicial impact, and the motivation for making

the remarks. *State v. Francis*, 151 Vt. 296, 299, 561 A.2d 392, 394 (1989).

Here, the prosecutor went far beyond the bounds of propriety. The statements were blatant, persistent, and uncorrected by the court. In particular, the prosecutor's closing comment at the end of the cross-examination came at a critical moment in the trial when the jury, having just heard defendant's testimony, was in the best position to judge his credibility. It was not a "spontaneous and inadvertent slip." *State v. Hamlin*, 146 Vt. 97, 103, 499 A.2d 45, 50 (1985). The comment had a "studied purpose," *Lapham*, 135 Vt. at 407, 377 A.2d at 257, intending to inject a highly prejudicial remark at a crucial point of the trial.

Defendant objected to some, but not all, of the acts and commentary discussed. Even where defendant has failed to preserve an issue, we may still reverse if the error is plain. "[W]e will find plain error to warrant reversal of a criminal conviction, absent preservation, only in rare and extraordinary cases where the error so affects the substantial rights of the defendant that we cannot find the trial overall to be fair." *State v. McCarthy*, 156 Vt. 148, 154, 589 A.2d 869, 873 (1991); see V.R.Cr.P. 52(b). Taken together, the errors discussed are sufficient to support a finding of plain error.

## B.

One particularly prejudicial prior bad act, first presented in the State's direct case, and reappearing on cross-examination and closing argument, deserves discussion. It was an incident that was brought to light by the testimony of the mother's counselor, Mark Williams, in which he related that the mother had told him that her brother-in-law had walked into defendant's house in California and had seen him sitting in a circle of children with an exposed erection. When Williams heard this, he advised the mother that, if it were true, he had an obligation to report the matter to the Department of Social and Rehabilitation Services (SRS). The mother then notified SRS herself and obtained a relief-from-abuse order. The evidence was admitted over defendant's objection because the court found that it was not admitted for the truth of the matter asserted, but to form a basis for the witness's further testimony. The court then gave a limiting instruction to the jury.

The State argues that the evidence was necessary to rebut defendant's theory of the case, that the mother had fabricated the

charges against him after the discovery of his affair with another woman. It contends that the mother acted to avoid having a third party report the information; therefore, it was necessary to show why the counselor intended to act.

The basis of the counselor's testimony was a thin reed upon which to admit the evidence. Defendant did not dispute that the counselor was behind the mother's report to SRS. Indeed, it was part of defendant's theory of the case that the alleged abuse was a figment of the counselor's imagination, so the evidence was not critical to the State's case. When viewed in light of Rule 403 considerations, the prejudicial value of the evidence substantially outweighed its probative value.[1]

█ The evidence was highly prejudicial because it reflected uncharged conduct similar to the allegations being tried, and invited the jury to convict on alleged crimes for which defendant had escaped punishment, precisely the result that Rule 404(b) is designed to prevent. See *United States v. Williams*, 985 F.2d 634, 637–38 (1st Cir. 1993) (evidence of uncharged, unrelated murder was not relevant to plan of intimidation or modus operandi and was improperly admitted solely to show propensity). The record is devoid of an effort by the trial judge to balance the probative value versus prejudicial effect of this evidence. It was an abuse of discretion to admit it, even with the limiting instruction that it was not to be considered as true.

The prosecutor then confronted defendant with the incident on cross-examination for an improper reason. Defendant was asked on direct examination to relate when he first became aware that his wife had accused him of sexually abusing the children. His response was that he became aware of it when he read "three mild accusations" in the temporary restraining order (TRO). He did not state what the accusations were. The State then confronted defendant with the "fourth" allegation, and read a description of the incident from the TRO.

The State argues that it was entitled to correct the impression created by defendant in his direct testimony that there were only three allegations of child abuse in the TRO, rather than four. But the issue on direct was not the contents of the TRO. It was the time at

---

[1]Vermont Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

which defendant first became aware of his wife's accusations. In this context, the number of accusations or the exact nature of those accusations was irrelevant. Even if clarification were required on the number of accusations, it was not required on content.

In her closing argument, the prosecutor gratuitously referred to the incident in the context of discussing defendant's opportunities to commit child sexual abuse in California because the family's house was in a remote location. The incident related by the brother-in-law was presented as proof of opportunity. Again, the evidence had no relation to the charges before the court other than to prove that defendant had a propensity to commit child sexual abuse.[2]

By the end of the trial, the jury had heard three references to a highly damaging piece of evidence that defendant had not been asked to admit or deny, and which was subject to a limiting instruction that the jury was not to consider the incident as having happened. When it was presented as fact by the prosecutor in closing argument, it is difficult to believe that any jury could have understood what use it should make of the evidence, creating the danger that it was used for an improper purpose.

## C.

Although the prosecutor intentionally engaged in conduct that diverted the jury's attention from the issues before the court, she was not able to accomplish this without the assistance of the trial judge. It is ultimately the trial court's responsibility to ensure that defendant is tried on the crime charged, not on his character or his alleged propensity to engage in criminal conduct. Here, the court's repeated failure to exclude prior bad acts, to curtail the use of character evidence for improper purposes, and to curb the prosecutor's comments was an abuse of discretion. We cannot say that the cumulative effect of the errors was harmless. See *Winter*, 162 Vt. at 401, 648 A.2d at 632 (admission of single, uncharged sexual assault in subsequent sexual assault prosecution was not harmless).

## II.

We must also address defendant's claim that the trial court erred in denying his motion for judgment of acquittal on the charge involving

---

[2] To the extent the State argues, in its brief, that this evidence is admissible to establish a scheme or plan of sexual molestation, *State v. Catsam*, 148 Vt. 366, 382, 534 A.2d 184, 194 (1987), we disagree. The evidence was not offered at trial for that purpose. It was offered to show the basis of the counselor's recommendation and to correct the number of accusations in the TRO.

B.L., his youngest son. B.L.'s testimony at trial was limited, and his story was told by his hearsay statements to his mother and to state police detective, Dane Shortsleeve.

Defendant first argues that B.L.'s hearsay statements were inadmissible for failure of the court to comply with V.R.E. 804a, leaving no testimony in the record on the elements of the offense other than B.L.'s statement that his father did something to him that he did not like to talk about. Second, defendant contends that even if B.L.'s statements are admissible, there is no evidence to support an essential element of the crime charged, that is, contact between defendant's penis and the child's anus. See 13 V.S.A. § 3251(1) (defining sexual act as conduct consisting of contact between penis and anus).

## A.

Hearsay statements by a child ten years of age or younger may be admitted at trial if (1) the child is a putative victim of sexual assault and the statement relates to the crime; (2) the statements were not taken in preparation for a legal proceeding, and if a criminal proceeding has been initiated, the statements were made prior to the defendant's initial appearance before a judicial officer under V.R.Cr.P. 5; (3) the child is available to testify; and (4) the time, content and circumstances of the statements provide substantial indicia of trustworthiness. V.R.E. 804a(a)(1)–(4). Defendant does not contest that B.L. qualifies as a putative victim of sexual assault, but he does claim the court erred in its determination of the remaining three criteria under Rule 804a(a)(2)–(4).

The hearsay statements admitted at trial arise from several different occasions, but we consider only B.L.'s statements to his mother because B.L.'s later disclosure to a police officer was no more revealing on the central issue than those already made. On February 11, 1991, mother first spoke with B.L. about inappropriate contact with his father. She testified that B.L. told her D.L. and his father had touched his private parts and played "peepee races." B.L. also told her that his father had bitten his butt and that one night he had woken up to find his father biting his butt and his pajamas wet.

First, the court correctly found that the statements to the putative victim's mother were in response to her suspicions of abuse and not taken in preparation for legal proceedings. B.L.'s disclosure was made within a few days of the issuance of a relief-from-abuse order. No other legal proceeding was pending at the time of the disclosure.

Persons investigating the child abuse allegations were not involved with B.L. until after he had made disclosures to his mother. We concur with the trial court's rejection of defendant's argument that because he was subject to a temporary relief-from-abuse order, all subsequent conversations were conducted in preparation for litigation.

We have previously held that "statements made by putative victims during SRS's initial investigation into allegations of sexual abuse are not necessarily 'taken in preparation for a legal proceeding.'" *State v. Duffy*, 158 Vt. 170, 173, 605 A.2d 533, 535 (1992). More recently, we held that a child's statements to a police officer, videotaped at a police station in the presence of an SRS caseworker, "were not 'taken in preparation for a legal proceeding.'" *State v. Blackburn*, 162 Vt. 21, 25, 643 A.2d 224, 226 (1993). In *Blackburn*, we noted that interpreting Rule 804a(a)(2) too broadly would require "every factual inquiry" to be considered in preparation of litigation. *Id.* at 24, 643 A.2d at 226. We held that the proper inquiry under the Rule "is whether an objective view of the totality of the circumstances indicates that the statements were gathered primarily for reasons other than preparation for a legal proceeding." *Id.* at 25, 643 A.2d at 226. The statements made by B.L. to his mother were the result of the mother's first inquiries about sexual abuse. Rule 804a(a)(2) embodies the concern that repeated interviews will be conducted by investigators until "nothing [is] left to do in preparation for trial." *Id.* A parent's initial, concerned questioning of a child is simply not the type of statement which Rule 804a(a)(2) is intended to exclude.

Defendant next argues that B.L.'s refusal to discuss the incident on direct examination rendered him unavailable to testify, thereby violating Rule 804a(a)(3). Although B.L. did not give detailed testimony concerning the alleged abuse, he did state that something had happened to him, involving his father, and that he did not like to talk about it. In addition, he gave a detailed description of the Lawton house and the location of his bedroom. He was available for cross-examination, though the defense chose not to exercise that right.

In cases of child sexual abuse, limited testimony does not equal unavailability. See *In re M.B.*, 158 Vt. 63, 69, 605 A.2d 515, 518 (1992) (child sex abuse victim was available at CHINS hearing though she testified she could not remember what the person who had abused her had done). Indeed, we noted in *State v. Gallagher* the likelihood that child victims of sexual crimes will be unable to deliver live testimony effectively. 150 Vt. 341, 347, 554 A.2d 221, 225, *cert. denied*, 488 U.S. 995 (1988). B.L.'s performance merely demonstrates the necessity for

the Rule 804a hearsay exception. Consequently, B.L. was available for purposes of Rule 804a(a)(3).

The final requirement imposed by Rule 804a(a) is that the hearsay statements have substantial indicia of trustworthiness. Unless clearly erroneous, we will not reverse a court's determination on the trustworthiness of particular statements where the findings are supported by credible evidence. *Gallagher*, 150 Vt. at 348, 554 A.2d at 225 (court found professionalism of interviews, internal consistency and detail of child's story, and child's affect, intelligence, memory and concern for truth supported trustworthiness of child victim's hearsay statements).

The court's conclusions with respect to B.L.'s statement to his mother were not clearly erroneous because the disclosure was made in response to the first time the mother asked B.L. about any incidents involving his father. See Reporter's Notes, V.R.E. 804a ("child-victim's early communications are often highly trustworthy"). Thus, B.L.'s statement was not the product of repeated interviewing, nor was any evidence of coercion or manipulation present. Given the circumstances, the statement was trustworthy.

Finally, defendant alleges the trial court impermissibly relied on corroborating medical evidence in determining that the children's hearsay statements, including B.L.'s, were trustworthy. He asserts that because hearsay statements are presumptively unreliable, the United States Supreme Court barred bootstrapping on the trustworthiness of corroborating medical evidence. See *Idaho v. Wright*, 497 U.S. 805, 823–24 (1990) (rejecting admission of two-and-a-half-year old's hearsay statements through pediatrician). While it is true the court alluded to the fact the children's statements were corroborated by a medical doctor, the court did so at the end of its findings and only after noting other indicia of trustworthiness. We do not deem mere mention of corroboration clearly erroneous.

## B.

The question remaining is whether B.L.'s hearsay statements were sufficient to establish the element of contact beyond a reasonable doubt.

In reviewing a motion for judgment of acquittal, the issue is whether the evidence, viewed in the light most favorable to the State, fairly and reasonably tends to show the defendant guilty beyond a reasonable doubt. *Jones*, 160 Vt. at 442–43, 631 A.2d at 843. It is not necessary to show guilt by direct evidence, and a criminal case may be

proved wholly by circumstantial evidence alone. *State v. Messier*, 146 Vt. 145, 150, 499 A.2d 32, 37 (1985). In *Messier*, we upheld a conviction of sexual assault even though no direct evidence of the sexual acts was adduced through testimony. The eyewitness in *Messier* could testify only to the position of the bodies, from which the jury could draw the inference that the required contact had occurred. *Id.* at 150, 499 A.2d at 37. In *Jones*, we affirmed a conviction for sexual assault on the basis of the testimony of a thirteen-year-old girl who testified to an attempt at penetration that hurt her. *Jones,* 160 Vt. at 443, 631 A.2d at 843.

Under *Jones* and *Messier*, we conclude that there was sufficient evidence from which a jury could determine the element of contact beyond a reasonable doubt. B.L. testified that his father did something to him that was hard to talk about, that he had talked about it with a police officer, and that it happened at home. His mother testified that B.L. had told her that his father had touched his private parts, had rubbed his leg against B.L.'s leg, had touched his penis and bitten his "butt." B.L. told her that he remembered a time when he woke up and his father was biting his butt and B.L.'s pajamas were wet. She also related that B.L. complained to her that he had a sore bottom.

Dr. Young, the pediatrician who examined all three boys, testified that B.L.'s physical condition was consistent with a history of rectal penetration, and that the best explanation for the physical condition of all three boys was that they had been the victims of sexual abuse. He based his opinion in part on his discussion with the two older boys, who related some of the sexual events to them. Dr. Young also testified that the physical findings were consistent with a penetrating object the size of an adult's, not a child's, penis.

Defendant relies on two cases where the court found insufficient evidence of sexual assault. See *State v. Prime*, 137 Vt. 340, 342, 403 A.2d 270, 271 (1979) (element of contact not established); *State v. O'Neill*, 589 A.2d 999, 1002–03 (N.H. 1991) (testimony that defendant "stuck his fingers in my bum" insufficient to support penetration of anus.) The decision in *Prime* does not detail the testimony found to be insufficient and does not aid our analysis. The decision from New Hampshire is not persuasive authority in light of our own decisions in *Jones* and *Messier*, and does not take into account that criminal cases

may be proved by circumstantial evidence. The motion for judgment of acquittal was properly denied.[3]

*Reversed and remanded for a new trial; denial of motion for judgment of acquittal affirmed.*

---

[3] Although defendant raised numerous errors on appeal, we decline to reach the remaining issues and leave them for decision in the context of a new trial, in the event the State chooses to retry defendant.