671 A.2d 1270 (1995)
In re C.K., Juvenile.
Nos. 94-508, 95-381.
Supreme Court of Vermont.
December 15, 1995.
*1271 Robert Appel, Defender General, and Henry Hinton and Judith A. Ianelli, Appellate Defenders, Montpelier, for appellant father.
Jeffrey L. Amestoy, Attorney General, Montpelier, Alexandra N. Thayer, Assistant Attorney General, Waterbury, Charles Martin of Martin & Paolini, Barre, Howard VanBenthuysen and James A. Hughes, Franklin County State's Attorneys, and Howard Stalnaker, Deputy State's Attorney, St. Albans, for appellees.
Before ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
DOOLEY, Justice.
This is a consolidated appeal from a Franklin Family Court CHINS merits order finding C.K. to be a child in need of supervision (CHINS),[*] and an order terminating parental rights. First, the appellant-father appeals the CHINS finding, arguing that (1) the trial court improperly admitted hearsay testimony under V.R.E. 804a(a)(3), (2) the court violated his right to confront witnesses by excluding him from the courtroom as the child testified, and (3) the court improperly admitted and relied upon hearsay expert testimony to find that C.K. had been sexually abused. We affirm the merits determination. Second, the father appeals the subsequent order terminating his parental rights, arguing that (1) the court violated his due process rights by prohibiting him from deposing the child or calling the child as a witness, and (2) the court erred in refusing to admit evidence that he did not sexually abuse the child as found in the merits adjudication. Because we find that the court erred in the resolution of the second issue, as we recently held in In re J.R., ___ Vt. ___, ___, 668 A.2d 670, 674 (1995), we reverse and remand the termination order for a new hearing consistent with that holding.
On November 27, 1990, C.K. reported to the school nurse that her father had sexually abused her. She told the nurse that her father had touched her "privates," that it hurt, that he had asked her to keep it a secret. The police delivered C.K. to the juvenile court, and after a hearing, C.K. was placed in the custody of the Vermont Department of Social and Rehabilitation Services (SRS).
*1272 Based on the allegations of sexual abuse, SRS sought to have C.K. declared a child in need of supervision. A contested merits hearing was held on December 19-20, 1990. As his first witness, the father called a pediatrician who had examined C.K. after she had been placed in SRS custody. On direct examination, the pediatrician testified that he had performed a physical examination of C.K.'s vaginal area and found no evidence of trauma. During cross-examination, the State asked the pediatrician whether he had an opinion as to whether C.K. had been sexually abused. Over the father's objection, the pediatrician testified that he believed C.K. had been sexually abused. Also over objection, the pediatrician testified to what C.K. had told him about the specific acts of sexual abuse by her father. He then testified that the information that C.K. had given him had been taken for treatment purposes and was therefore medical history. The father objected to the admission of C.K.'s statements to the pediatrician on the ground that the statements did not fall within the hearsay exception under Rule 804a. The court overruled the objection, concluding that the statements by C.K. to the pediatrician were taken for the purposes of treatment and therefore were admissible under Rule 804a.
The school nurse testified next, recounting what had happened during her routine examination of C.K. on November 27, 1990. The nurse explained that, while treating C.K. for a possible hearing problem, C.K. disclosed to her that she had been molested by her father.
After the nurse concluded her testimony, C.K. took the stand and gave extensive testimony during both direct and cross-examination. Initially, C.K.'s attorney informed the court that she would not testify in the presence of her father because she was concerned that her testimony would hurt him. In response, the court altered seating arrangements in the courtroom so that the father would be out of C.K.'s line of sight. Once in the courtroom, however, C.K. became upset when she realized her father was still in the courtroom. When asked to tell the court about the incidents of sexual abuse, she replied, "I can't say it in front of my dad." The court then excluded the father from the courtroom during C.K.'s testimony, but ordered that C.K.'s testimony be read to the father, in the presence of his attorney, before the attorney cross-examined C.K. Once the father was out of the courtroom, C.K. testified that she had been sexually abused.
Based on the evidence, the court found that C.K. had been sexually abused, and therefore, was a child in need of care and supervision. The court particularly based its decision on the extensive testimony of C.K., whom the court found to be a "spontaneous, honest witness, knew what the truth was and knew what a lie was, [and] told the truth." C.K.'s testimony was corroborated by the testimony of the pediatrician and the school nurse, whom the court found to be "credible witness[es]." After a disposition hearing, custody and guardianship of C.K. were transferred to SRS.
SRS filed a petition to terminate parental rights on January 17, 1994. On September 9, 1994, the court terminated the parental rights of both of C.K.'s parents, concluding that, in the four years since the initial SRS intervention, "no progress has been made towards family reunification." The father appeals both the CHINS findings and the termination of his parental rights.
The father's first arguments involve the admissibility in the merits hearing of the testimony of the pediatrician and nurse, relating C.K.'s statements to them that she had been sexually abused by her father. The court admitted this testimony under Vermont Rule of Evidence 804a. The pertinent part of Rule 804a provides that a witness may testify to hearsay statements made by a child ten years old or younger if there is an allegation of sexual assault on the child, the statements concern the alleged crime, the statements were not taken in preparation for a legal proceeding, the child is available to testify in court or under Rule 807, and the time, content, and circumstances of the statements provide substantial indicia of trustworthiness. See State v. Weeks, 160 Vt. 393, 399, 628 A.2d 1262, 1265 (1993).
The father contends that, because the court excluded him from the courtroom during C.K.'s testimony, C.K. was not "available" *1273 to the father within the meaning of Rule 804a(a)(3). The father's interpretation of "available to testify in court" is without merit. For Rule 804a(a)(3) purposes, limited testimony does not equal unavailability. See State v. Lawton, ___ Vt. ___, ___, 667 A.2d 50, 59 (1995) (testimony limited by child's willingness to testify); In re M.B., 158 Vt. 63, 69, 605 A.2d 515, 518 (1992) (testimony limited by child's partial loss of memory). The rule's requirement that the child be available to testify is to allow for cross-examination, to ensure the reliability of the hearsay statements. See State v. Gallagher, 150 Vt. 341, 344, 554 A.2d 221, 223, cert. denied, 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988); Reporter's Notes, V.R.E. 804a. In this case, the child testified at length, and was subject to cross-examination.
The language of the rule does not support the father's argument that the child witness must somehow be "available" to him. Indeed, the rule specifically authorizes testimony pursuant to Vermont Rule of Evidence 807(e), which provides for testimony by closed circuit television where the child is not present in the courtroom and is not in the presence of the defendant. In that circumstance the child is no more available to defendant than in this case.
Next, the father claims that the testimony of the pediatrician and nurse were inadmissible under Rule 804a(a)(2), because the statements elicited from C.K. were "taken in preparation for a legal proceeding." The requirement of Rule 804a(a)(2) is met if the totality of the circumstances indicates that the statements were gathered primarily for reasons other than preparation for a legal proceeding. See Lawton, ___ Vt. at ___, 667 A.2d at 58; State v. Blackburn, 162 Vt. 21, 25, 643 A.2d 224, 226 (1993). The factual circumstances as found by the trial court govern unless found to be clearly erroneous. Blackburn, 162 Vt. at 24, 643 A.2d at 226. In CHINS proceedings, we have held that statements made during an initial SRS investigative interview are not made in preparation of legal proceedings. State v. Duffy, 158 Vt. 170, 173, 605 A.2d 533, 535 (1992). We reasoned that the exclusion of all or any statements made during an SRS interview would frustrate the purpose of Rule 804a, which is to allow highly trustworthy early communications by child victims to reach the factfinder. Id. at 172, 605 A.2d at 535.
In the present case, C.K.'s statements to the nurse were made during the course of a routine hearing examination, and the nurse contacted SRS in response to what C.K. told her. C.K.'s statements to the pediatrician were made on the same day and in the course of her medical treatment. The totality of the circumstances indicate that the statements to the nurse and pediatrician were made primarily for medical treatment, and were not made in preparation for a legal proceeding. Were we to accept the father's broad interpretation of what statements are made in preparation for legal proceedings, we would have to place virtually every statement of a minor victim in this category. See Blackburn, 162 Vt. at 24, 643 A.2d at 226. Such a broad interpretation would clearly frustrate the purpose of Rule 804a. See Duffy, 158 Vt. at 172, 605 A.2d at 535.
In a related argument, the father claims that the court violated Rule 803(4) when it admitted the hearsay statements made by C.K. to the pediatrician after concluding that the statements were made for treatment purposes. The father argues that, under Rule 803(4), statements about the cause or origin of a medical condition are not admissible, and that in the present case, C.K.'s statements about who had sexually abused her were statements about the cause of her medical condition. We decline to consider this argument because the statements were admissible under Rule 804a, as we have held above. See Gallagher, 150 Vt. at 349, 554 A.2d at 226 (erroneous admission of hearsay statement of minor victim under Rule 803(4) was harmless where statement admissible under Rule 804a).
Next, the father argues that even if the pediatrician could testify to C.K.'s statements under Rule 804a, the court erred by allowing him to testify that he believed C.K. had been sexually abused. This testimony, he argues, runs afoul of our prohibition on testimony by expert witnesses who vouch for the truthfulness of the child alleging sexual abuse. See Weeks, 160 Vt. at 400-03, 628 *1274 A.2d at 1266-67. In Weeks, we held that Rule 804a does not allow a witness who testifies to a child victim's statement about sexual abuse to also vouch for the victim's story. Id. at 399-400, 628 A.2d at 1265-66.
We agree that if this had been a criminal proceeding tried to a jury, the pediatrician's testimony that he believed that C.K. had been sexually abused, as she claimed, would be grounds for reversal. The standard of review in a juvenile proceeding is different, however, and warrants a different result. We explained the standard in In re R.M., 150 Vt. 59, 65-66, 549 A.2d 1050, 1054-55 (1988), as follows:
[T]he erroneous admission of evidence by itself is not grounds for reversal. The burden is on the excepting party to demonstrate that the error resulted in prejudice. See V.R.C.P. 61 (error must "affect the substantial rights of the parties" and failure to take action to correct must be "inconsistent with substantial justice"). . . .
In determining whether the hearsay testimony of Dr. Holmes was fatal to the merits proceedings, we first consider the effect of the testimony on the decision of the juvenile court. . . . The court's findings. . . briefly reference the tainted portion of the physician's testimony . . .
We have reversed a CHINS determination based on tainted evidence only when we have determined that the "findings independent of the challenged [evidence] do not support a conclusion that the child is without proper parental [care and supervision]. . ." In re M.P., 133 Vt. [144] at 147, 333 A.2d [116] at 118 [(1975)]. See also In re J.L.M., 139 Vt. [448] at 450, 430 A.2d [448] at 450 [(1981)] (determination of unmanageability reversed where it rested "solely" on the evidence that was erroneously admitted). Here, the court's conclusions are adequately supported by the findings, exclusive of the single reference to hearsay testimony. There are no grounds to reverse.
We have consistently followed the standard of review expressed in R.M. See In re B.S., ___ Vt. ___, ___, 659 A.2d 1137, 1143-44 (1995); In re M.B., 158 Vt. at 70, 605 A.2d at 518-19; In re C.M., 157 Vt. 100, 103, 595 A.2d 293, 294 (1991).
This case is similar to R.M. in the use and impact of the erroneously admitted evidence. Although the improper conclusion of the pediatrician is mentioned in the court's findings in passing, it is clearly not the primary basis for the court's conclusion that the father sexually abused C.K. The court characterizes the pediatrician's conclusion as reached "for his treatment purposes" based on "his medical history." The court's conclusion that C.K. was sexually abused is based primarily on C.K.'s thorough and detailed testimony. The findings state: "[T]his court believes that girl." The reliability of C.K.'s testimony was bolstered by her consistent statements to the pediatrician and the nurse. As in R.M., the court's ultimate finding that the father sexually abused C.K. is based on the findings other than the reference to the improper evidence. We find no grounds to reverse.
In reaching this result, we recognize that expert evidence about the truthfulness of a child victim can be prejudicial even in a CHINS case. Both the nature of the evidence, and the court's use of it, convince us that insufficient prejudice has been demonstrated in this case. The testimony came from a medical doctor rather than from an expert in the actions of child sexual abuse victims who might be seen to have special insight into the credibility of sexual abuse claims. The purpose of his conclusion was solely to determine his medical treatment. The court's passing finding noted this limited purpose for the conclusion. Even if we accept that a trial judge's decision could be swayed improperly by the credibility assessment of a pediatrician, there is no indication that it was in this case.
Finally, with respect to the merits adjudication, the father claims that the court erred by excluding him from the courtroom during C.K.'s testimony. He argues that this action violated 33 V.S.A. §§ 5519(b) (hearing at which parents and child appear required on CHINS petition), 5523(c) (CHINS hearing is nonpublic, and only certain persons, including the parties, may be admitted), and the confrontation clause of the Sixth Amendment *1275 to the United States Constitution. We have recently rejected the constitutional argument because the constitutional confrontation right is inapplicable. See In re A.L., ___ Vt. ___, ___, 669 A.2d 1168, 1170 (1995) ("parents do not have a right to face-to-face confrontation in CHINS proceedings"). Neither of the statutes cited by the father creates a confrontation right.
In this case, C.K.'s attorney informed the court that C.K. would testify only if her father was not present in the courtroom because she was afraid that her testimony would hurt her father. The court attempted to accommodate C.K.'s needs by arranging for the father to be seated in a place where he would be out of C.K.'s line of sight, but this action was unsuccessful. The court then excluded the father from the courtroom while C.K. testified, but only after ensuring the father could advise his counsel on appropriate cross-examination.
The facts of this case are similar to those in In re Michael C., 557 A.2d 1219, 1220-21 (R.I.1989), one of the decisions relied upon in In re A.L. In Michael C, the trial judge cleared the courtroom when the child became upset, and proceeded to ask the child questions with only the court reporter present to record the testimony. Id. at 1219-20. The Rhode Island Supreme Court held that use of such a procedure "lies within the discretion of the trial justice after consideration of the best interests of the child as weighed against the interests of the parents and the state." Id. at 1221. In the absence of a specific contrary rule, we agree with this approach. See V.R.E. 611(a) ("court shall exercise reasonable control over the mode. . . of interrogating witnesses . . . so as to. . . protect witnesses from harassment or undue embarrassment"). There was adequate justification for the court's exercise of discretion here. There is no error.
Finally, we address the father's appeal from the order terminating parental rights. The father attacks this order because the court prohibited him from calling C.K. as a witness, and refused to allow him to present evidence that he never sexually abused her. We agree with the latter argument and do not reach the former.
The court refused to allow evidence of whether the father sexually abused C.K., giving preclusive effect to the merits finding that he had sexually abused her. The father argues, however, that the merits finding cannot be given preclusive effect because it was based on a preponderance of evidence standard of proof and not the higher standard of clear and convincing evidence that applies in a termination proceeding. We recently approved this rule in In re J.R., ___ Vt. at ___, 668 A.2d at 674.
The facts here are essentially the same as those in J.R. There is no indication that the court found in the merits proceeding by clear and convincing evidence that C.K. had been abused. The disposition adjudication was perfunctory, relying entirely on the merits findings. In the absence of a finding of sexual abuse at the higher standard of proof, the father is entitled to relitigate the question at the termination proceeding as bearing on the grounds for termination. See 33 V.S.A. § 5540(1), (4) (at termination, court must consider best interests of child, including "interaction and interrelationship of the child with his natural parents" and "[w]hether the natural parent has played . . . a constructive role . . . in the child's welfare").
Accordingly, the termination of the father's parental rights must be reversed and the matter remanded for a new termination hearing.
The merits order is affirmed. The termination of parental rights order is reversed, and the cause is remanded as to appellant father.
NOTES
[*] The procedural history of this case is unusual and rather lengthy. The original merits hearing occurred on December 19-20, 1990, and the merits order finding C.K. to be CHINS was dated January 25, 1991. The father's brief was filed in this Court in August 1995, over four years after the original merits determination. We bear some of the responsibility for this delay. Due to a clerical error, the appeal was never separately docketed, and no "record complete" notice was sent to trigger the time limits for events in this Court. Notwithstanding this error, we would normally dismiss an appeal this old for lack of progress. SRS has requested this relief. In CHINS proceedings, however, a parent facing removal of his or her child is guaranteed legal counsel. We will not punish the parent for the delay.