*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-272

DECEMBER TERM, 2014

| | |
|---|---|
| In re B.S., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Windham Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 1-1-14 Wmjv |

Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Father appeals the superior court's order adjudicating his son, B.S., a child in need of care or supervision (CHINS). On appeal, father argues that there was insufficient evidence to support the court's findings that B.S. was abused by a parent and without proper parental care. We affirm.

B.S. was born in September 2013. The Department for Children and Families (DCF) was involved with the family prior to his birth because both parents struggled with substance abuse. B.S. was born addicted to opiates. On January 4, 2014, when B.S. was three months old, mother brought B.S. to the emergency room because his left leg appeared to be injured. Diagnostic x-rays revealed that B.S. had a fractured left tibia. The examination revealed that in addition to the leg injury, B.S. had two compression fractures in his lower spine. At the time, B.S. was primarily being cared for by mother. Father would come and visit. Neither parent could explain the injuries. DCF filed a CHINS petition alleging that B.S. had been abused and was without proper parental care. DCF was granted temporary custody of the child.

There was a contested CHINS hearing over three days in May and July 2014. Among the witnesses was Dr. Hymel, a pediatrician and expert in diagnosis of child abuse. At the time B.S. was examined, Dr. Hymel was the director of the child advocacy and protection program at Dartmouth-Hitchcock Medical Center (DHMC), where B.S. was examined. Dr. Hymel testified that B.S. had a fracture of the lower left leg below the knee, and two compression fractures in individual bones of the spine. Dr. Hymel explained that the spinal fractures were caused by crushing and it was difficult to estimate their age. Dr. Hymel stated that the spinal fractures could have been caused by slamming the child down on his buttocks onto a firm surface or violently and forcefully flexing the child at the spine. Dr. Hymel described the compression fractures as unusual injuries, even if B.S. had been an ambulatory child. The leg injury was a transverse fracture across the bone and Dr. Hymel stated to cause that type of fracture would have required bending, striking, or jerking the entire body by the leg. Mother reported to Dr. Hymel that B.S. always cried when father changed his diaper. Dr. Hymel concluded that the injuries were highly suspicious because they were wholly unexplained, B.S. was nonambulatory and lacked the gross motor skills to injure himself, the spinal fractures were so unusual, and

because there were at least two separate injury events. He was additionally concerned because mother stated that father handled the child roughly.

The State also presented testimony from another expert, Dr. Vaccaro, a pediatric radiologist at DHMC. She stated that B.S.'s leg injury is not typically found in an immobile infant, and the injury must have been caused by considerable force applied to the leg or falling from a considerable height. From the x-ray, she estimated that the leg injury had occurred within a few days. Similarly, she testified that the spinal injury would have required tremendous force. She explained that there was no indication that B.S. had a condition that would cause the injuries.

The court made findings on the record. The court found that the State had met its burden of demonstrating that B.S. was CHINS. Based on the medical evidence, the court found that B.S. had been subjected to at least two separate abuse events. The court found that both the fracture to the leg and the fractures in the spine required large force. The leg fracture could have been caused by a jerking up of the leg, and the compression fractures in the spine required "violent significant force." The court credited Dr. Hymel's testimony that the child could not have caused the injuries himself, and Dr. Vaccaro's testimony that there was no genetic or other reason for the injuries. The court found that the medical evidence was "overwhelming" that B.S. had been subjected to abuse, but that the evidence did not demonstrate clearly and convincingly the source of the abuse. Based on the evidence, including testimony that father changed son alone and that B.S. cried during changing, the court explained that father was "either incredibly inept or was deliberately harming his son," and found by a preponderance of the evidence that father was the source of the abuse. The court further found that mother's failure to intervene and her failure to notice something was wrong amounted to lack of proper parental care by clear and convincing evidence. Father appeals.

In this case, the State alleged that B.S. was CHINS based on two of the statutory provisions: for abuse by a parent and for lack of proper parental care. See 33 V.S.A. § 5102(3)(A), (B) (listing meanings of CHINS). On appeal from a CHINS determination, this Court will uphold the trial court's factual findings unless they are clearly erroneous, and the court's legal conclusions if supported by the findings. In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508.

Father argues that there was insufficient evidence to show that B.S. was abused by a parent. Father asserts that the evidence was not sufficient to demonstrate that B.S.'s leg injury was caused by father because there was no direct evidence of the abuse and the evidence of the timing of the abuse was uncertain.

At the outset, we reject father's contention that the State was required to support its petition with direct evidence that B.S. was abused by father. Especially in cases involving infants and young children, there is often no direct evidence establishing the identity of the abuser. If there is no witness to an abusive event and no admission from the abuser, the case depends on circumstantial evidence. There is no bar to the State supporting its case with circumstantial evidence. Even in criminal cases, where the burden of proof is beyond a reasonable doubt, guilt can be proven by circumstantial evidence alone. State v. Lawton, 164 Vt. 179, 190-91 (1995).

Here, the evidence as to B.S.'s leg injury included the following. The State's experts testified that the force required to inflict the injuries was extreme, and B.S. could not have

2

caused the injury to himself or through accidental means. Further, the explanations for the injuries provided by B.S.'s parents were not possible mechanisms for the injuries, and B.S. did not have a physiological condition that would have caused the fractures. Additionally, there was evidence that father had unsupervised access to the infant during the relevant time periods and mother reported that she heard B.S. crying when alone with father. This was sufficient for the court to find that it was more probable than not that B.S. was abused by a parent.

Father asserts that there was little evidence on the age of the leg injury or the mechanism of injury, and therefore there was an insufficient basis for the court to link to the injury to father's contact with the infant. The evidence on the timing of the leg fracture was sufficient.[1] Dr. Vaccaro testified that she examined x-rays of B.S. from January 7 and those x-rays demonstrated that the leg fracture was four-to-seven days old. Her acknowledgement that the x-ray was "a little unclear" because it was taken through a cast did not alter her opinion that the injury had taken place within a few days of B.S.'s arrival at the hospital. The other lay witness testimony also supports this time frame. B.S.'s maternal grandmother testified that she first noticed the injury on January 3. There was testimony that father had unsupervised access to the infant during this time. Father's assertion that the court could not articulate with certainty exactly how the injury was caused does not preclude the court from finding that the injury was the result of abuse by father. The court credited the medical testimony that the injury was caused by a violent event; the court was not required to detail exactly how the injury occurred. Finally, there is no merit to father's claim that the court could not consider nonincriminating evidence, such as that father changed B.S.'s diapers while unsupervised and that B.S. cried while with father. The context of the evidence is what makes it incriminating. It was entirely up to the court as the factfinder to decide how much weight to give to the evidence and to assess the credibility of the witnesses. In re M.L., 2010 VT 5, ¶ 29, 187 Vt. 291. The court could properly consider the testimony regarding father's interaction with the child, even if those interactions would seem innocuous absent a severe injury to the child.

As to the spinal injuries, father claims that there was also no evidence to show that they occurred when B.S. was in the care of his parents, and no direct evidence that either of B.S.'s parents abused him and caused the spinal injury. The evidence was sufficient for the court to find father caused the injury by a preponderance of the evidence. The evidence showed that the spinal fractures must have occurred between November 11, 2013 and January 4, 2013 because the medical testimony was that the fractures were not present in mid-November when B.S. had x-rays for an unrelated viral infection. The evidence also showed that the fractures were caused by severe force and could not have been caused accidentally or by ordinary handling of an infant. Finally, the evidence demonstrated that father had access to B.S. during this time period and had periods of time alone with the infant. This was sufficient for the court to find by a preponderance of the evidence that B.S. was abused by a parent.

Father points to the trial court's findings and argues that, even if the evidence could be viewed in a way that supports the trial court's conclusions, the trial court's own findings do not. In particular, father argues that the trial court made no findings concerning the time frame of the

---

[1] Father contends that it is improper to consider the testimony that the injury occurred within several days of January 4 because the trial court did not make a finding on this matter. The question is whether there was sufficient evidence for the court to find that B.S.'s injury was caused by father's abuse. In deciding that question, this Court examines whether there is credible evidence to support the finding. In re A.F., 160 Vt. 175, 178 (1993). This may include evidence not particularly mentioned by the court in its order.

3

leg injury, whether father was alone with the child before the injury was discovered, the force or violence associated with the injuries, or whether any witness has noticed the injury before January 3.

We disagree. The trial court found that the leg fracture could only have been caused by a bending or a direct strike, that the compression fractures of the spine would have taken violent and significant force, that there is no way the child could have caused the injuries himself, and that the child suffers no disease that would have caused the injuries. Citing medical testimony, the trial court found that the injury had to have resulted from violently rough handling, and that it would take considerable force on the leg or a fall from a considerable height to cause the leg injury. It further cited evidence that father regularly took the baby off and changed him elsewhere and nobody could see what he was doing, and that the baby cried when father changed him. With respect to the timeline, and the circumstantial evidence that father caused the leg injury, the court cited evidence that the baby was fine until father took the baby into another room to change a diaper, mother and grandmother heard crying, the baby was put in a car seat, they drove somewhere, and when they were getting the child back out of the car seat they noted the swelling of his leg. These findings are supported by the evidence, and, in turn, support the trial court's conclusion.

Next, father argues that there was insufficient evidence to support the court's finding that B.S. was without proper parental care. Father claims that it was improper for the court to infer a lack of proper parental care from the fact that B.S. suffered unexplained injuries while in mother's care. At the CHINS stage, the focus is on whether the child is in need of care or supervision, and the court can draw upon common sense and experience in reaching its decision. In re L.M., 2014 VT 17, ¶¶ 19, 30. Based on the evidence that B.S.'s injuries could not have been caused by ordinary accidental means, that the injury to B.S. would have required violent force so that an observer would perceive the action as very dangerous and highly likely to cause injury, and that mother did not seek medical help for B.S. upon discovering the injury to his leg, there was an adequate basis for the court to find that B.S. was without proper parental care. Either mother witnessed the abusive event and did not intervene or she failed to adequately protect B.S. from severe abuse and did not seek medical attention upon discovering the injury.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4