NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 109

No. 2014-363

In re A.M., Juvenile

Supreme Court

On Appeal from
Superior Court, Chittenden Unit,
Family Division

February Term, 2015

Thomas J. Devine, J.

Matthew F. Valerio, Defender General, and Sara Puls, Appellate Defender, Montpelier, for
  Appellant Mother.

William H. Sorrell, Attorney General, and Martha E. Csala, Assistant Attorney General,
  Montpelier, for Appellee State.

Michael Rose, St. Albans, for Appellee Juvenile.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **EATON, J.**    Mother appeals from the trial court's disposition order continuing legal custody of the minor child A.M. with the Department for Children and Families (DCF). She argues that the court erred by failing to take evidence on whether the disposition plan should be amended to include reunification with A.M.'s maternal grandmother as a third concurrent goal. Mother maintains that the court should not have taken judicial notice of a prior ruling concerning grandmother's unsuitability to provide even temporary care for A.M. Based on these assertions, mother contends that the court's order is unsupported by any findings. We affirm.

¶ 2.     A.M. was born in October 2011 to parents who struggle with substance abuse. A.M. was taken into emergency DCF custody in June 2013. In its petition alleging that A.M. was a child in need of care or supervision (CHINS), DCF indicated that A.M. had been found in a motel room with parents in the presence of heroin and drug paraphernalia. The court issued a temporary-care order on June 4, 2013 transferring temporary legal custody of the child to DCF, and A.M. was placed with his maternal grandmother.

¶ 3.     A.M. was adjudicated as CHINS in November 2013 based on parents' stipulation. Both parents admitted to a history of drug use. They acknowledged that A.M.'s maternal grandmother had cared for A.M. between August 2012 and January 2013 because parents were incapable of doing so due to their drug use. During this time, mother, by agreement, was not allowed to have any unsupervised contact with A.M. Mother was still abusing heroin in January 2013. Between February 2013 and May 2013, with a minor exception, mother was incarcerated. Mother did not engage in any substance-abuse treatment while incarcerated. Given these facts, as well as mother's housing instability following her release from jail, mother admitted that she was not in a position to parent A.M. at the time the CHINS petition was filed on June 3, 2013.

¶ 4.     Father had been A.M.'s primary caretaker since February 1, 2013. He admitted that he had relapsed on heroin and had been struggling with relapses for approximately one month before the CHINS petition was filed. He, too, agreed that A.M. was CHINS.

¶ 5.     A question arose during the CHINS merits hearing about grandmother's suitability as A.M.'s caretaker. DCF would not license grandmother as a foster parent and, as a result, DCF sought to transfer A.M. to a new foster home. Mother moved to transfer temporary custody to grandmother. In an entry order, the court indicated that it would maintain the status quo pending an evidentiary hearing on mother's motion, given A.M.'s age and his relationship with grandmother. The court thus issued a temporary conditional custody order to grandmother.

¶ 6. Between January 2014 and early May 2014, the court held three days of evidentiary hearings on mother's motion. In late May 2014, DCF moved to reopen the evidence based on new allegations that grandmother was facilitating mother's drug use and that mother had been ordered, due to recent criminal charges, to reside with grandmother in the same residence where A.M. lived. Following an emergency hearing, the court transferred custody of A.M. to DCF. The court held a final hearing on mother's motion on July 1, 2014.

¶ 7. In late July 2014, the court issued a lengthy order concluding that grandmother was not a suitable placement for A.M. The court found, among other things, that: grandmother had been substantiated for child abuse in 1998; two of grandmother's children, including mother, had been removed from her care and placed in DCF custody; grandmother was the subject of fifteen relief-from-abuse orders obtained by various family members; reports had been made to DCF about bruises found on A.M.; grandmother had alcohol issues in the past and was inconsistent about her current alcohol use; grandmother admitted to smoking marijuana once or twice a day; a marijuana pipe was found in A.M.'s bag at daycare; and grandmother often appeared at daycare with bloodshot eyes and variable behavior, and at times, seemed incapable of understanding what the daycare worker was saying.

¶ 8. The court also recounted an incident in mid-May 2014 where mother and father had been observed apparently using drugs in grandmother's car. Grandmother was seen entering the driver's side of the car shortly thereafter and putting a bag in the glove compartment. It was not clear if grandmother had been in the car at the same time as mother and father. Mother and father went to a nearby park where grandmother met them. In a search connected with this incident, the police found a marijuana pipe, with residue, in grandmother's purse. Heroin packets were discovered on father, and two empty, open heroin packets were discovered in grandmother's car. While the court found the circumstances surrounding grandmother's

3

participation in this incident to be suspicious, it did not conclude that she facilitated any drug use or possessed heroin.

¶ 9. Based on these and other findings, the court considered grandmother's suitability as a temporary legal custodian. In determining suitability, the court considered the relationship between A.M. and grandmother, as well as grandmother's ability to: provide a safe, secure, and stable environment; exercise proper and effective care and control of A.M.; protect A.M. from the custodial parent to the degree the court deemed such protection necessary; support reunification efforts, if any, with the custodial parent; and consider providing legal permanence if reunification failed. 33 V.S.A. § 5308(b)(3).

¶ 10. In finding grandmother to be an unsuitable placement option, the court cited her previous substantiation for abuse, multiple relief-from-abuse orders, concerns about her previous alcohol use and her minimization of her current alcohol use, her use of marijuana, and evidence that she did not remember conversations with A.M.'s daycare provider. The court found that, while recent suspicions regarding abuse of A.M. had not been substantiated, grandmother's history, coupled with more recent concerns, made grandmother an unpredictable and potentially dangerous caregiver for A.M., particularly because there was no indication that grandmother had engaged in any services that might mitigate concerns about her past violent behavior.

¶ 11. For these and other reasons, the court concluded that grandmother could not assure a safe, secure, and stable environment for A.M. Under the circumstances, she could not support reunification efforts. The court noted that grandmother had also expressed concerns about her own ability to facilitate A.M.'s care. Grandmother admitted to feeling overwhelmed at times. While this alone was not enough to doubt her ability, it raised doubts about her resolve to provide legal permanence if reunification with parents failed. Thus, based on the statutory factors, the court concluded that grandmother was not a suitable placement for A.M. pending disposition, and it denied mother's motion to transfer temporary custody to grandmother.

4

¶ 12. In reaching its decision, the court noted that this case had not yet reached disposition due to the parties' successive continuances and intervening motions. While the court had held substantial evidentiary hearings on the issue of custody, a disposition plan had just been filed on June 30, 2014. The court recognized the need to make predisposition custody orders based on reliable evidence, but found it incumbent on the parties to work toward disposition so that A.M. could achieve permanency.

¶ 13. DCF's proposed disposition plan had concurrent goals of reunification with one or both parents or adoption. Several days prior to the disposition hearing, mother filed an objection to the case plan, asking that grandmother be included as a custodial option and given a plan of services.

¶ 14. In late September 2014, the court, with a different presiding judge, held a disposition hearing. The hearing occurred two months after the court's ruling on grandmother's unsuitability and fifteen months after the CHINS petition had been filed. The court again emphasized the long delay that had occurred in this case. It acknowledged the prior litigation over grandmother's suitability and indicated that it had read the prior decision on mother's motion to transfer custody. The court found that a critical amount of time had been lost due to that motion, and for A.M.'s sake, it could not afford any more delay.

¶ 15. During the hearing, the court discussed the proposed disposition plan with each parent, with A.M.'s attorney, and with the guardian ad litem, inquiring whether they had any objections to it. It asked parents about the progress that they were making in addressing their substance-abuse problems and other issues. The court suggested that additional visitation might be warranted to achieve the goal of reunification, and it encouraged parents to demonstrate their commitment to achieving this goal. Aside from a minor factual correction, father indicated that he had no objections to the plan. Aside from the issue involving grandmother, discussed below,

mother stated that she had no objection to the plan. A.M.'s attorney and the guardian ad litem also agreed with the proposed plan.

¶ 16. As indicated, mother asked the court to amend the disposition plan to include adoption or some kind of custody placement with grandmother as a third option. The court denied mother's request. It explained that the prior litigation involving grandmother had brought to light many troubling issues. The court recognized grandmother's role in A.M.'s life, but it pointed to all of the evidence found by the court in its July 2014 decision, including grandmother's substantiation for child abuse, the numerous relief-from-abuse orders obtained against her, her minimization of her alcohol use, and her regular use of marijuana. The court was also troubled by the fact that empty packets of heroin were found in grandmother's car, which raised obvious safety issues.

¶ 17. The court noted that parents did not challenge the court's ability to find that they were unfit to care for A.M.—they had essentially stipulated to the facts in the proposed disposition report. The court found no obligation to determine, by clear and convincing evidence, that grandmother was unsuitable as a caretaker. Given this, the court found it appropriate to take judicial notice of the prior findings concerning grandmother. It had the same concerns about grandmother expressed in the earlier ruling. The court also found it unlikely that some type of custody arrangement with grandmother would provide A.M. with the permanence he needed, as it was unlikely that a permanent guardianship or adoption with grandmother would ever be approved.

¶ 18. The court thus overruled mother's objection to the goals set in the disposition plan. It found that the concurrent goals of reunification or, if reunification failed, adoption were in A.M.'s best interests. The court made a factual correction to the plan as requested by father. It also expressed its concern about the level of visitation provided in the plan. It set March 2015 as the target date for substantial compliance. The court adopted the plan with the amendments

indicated and informed the parties that they would meet again in two months for a post-disposition review.

¶ 19. After the court delivered its decision, mother's attorney again raised the issue of grandmother as a placement option. Counsel agreed that there were valid concerns about grandmother's suitability as reflected in the court's earlier ruling. He suggested, however, that grandmother might be able to "get on a program to rehabilitate herself" through parenting classes and a treatment program. Counsel indicated his understanding that grandmother had been trying to improve herself since May 2014, and he asked the court to reconsider its decision. Counsel asserted that, while he might be wrong, he believed that mother was entitled to an evidentiary hearing on that issue.

¶ 20. The court responded, first, by noting that mother had not requested an evidentiary hearing at the outset of the proceedings. The court explained that they had just completed a hearing, and there had already been four separate hearings about grandmother's suitability, with hours and hours of testimony. The court thus denied the motion to reconsider. It noted, however, that if grandmother continued to show the type of progress that counsel alluded to, mother could move to modify the disposition order if reunification with parents seemed unlikely, and if there was clear evidence that grandmother had a new suitability that the court did not find before.

¶ 21. Mother appealed from the court's order. Mother argues that the trial court violated her right to a disposition hearing. She maintains that she had a statutory and due process right to present evidence concerning grandmother's suitability. Mother suggests, for the first time on appeal, that the court should not have taken judicial notice of the earlier ruling concerning grandmother because this decision involved "a separate, irrelevant, prior hearing, involving different issues, with a different burden of proof and a different statutory question." Had a "proper hearing" been held, mother continues, she would have been able to cross-examine

the author of the disposition report and counter the report's assertions with evidence of her own. Finally, mother contends that the court's disposition order is unsupported by any factual findings because it took no evidence.

¶ 22. We turn first to mother's argument that she had a right to present evidence concerning grandmother's suitability. Having recently taken extensive evidence on the suitability of the third party, we conclude that the trial court had discretion to decide whether to allow parents in a CHINS proceeding to put on new evidence regarding the suitability of a third-party caretaker. For this reason, mother's rights were not violated by the court's decision not to hear additional evidence of grandmother's suitability.

¶ 23. The disposition process starts with a disposition case plan filed by DCF, which includes a primary permanency goal—finding "a safe and permanent home" for the child—and may include a concurrent permanency goal. 33 V.S.A. § 5316(b)(1). Here, as in many CHINS cases, the disposition case plan provided concurrent goals of reunification with the parents or adoption. DCF argues that a case plan cannot include a third goal of placement with a third-party relative, but we need not reach that argument.

¶ 24. The purpose of a disposition hearing is to decide the disposition order for the child who has been found to be CHINS. In re B.R., 2014 VT 37, ¶ 14, 196 Vt. 304, 97 A.3d 867; see 33 V.S.A. § 5317. The statute provides seven different authorized disposition placements, the final one being "[a]n order transferring legal custody to a relative or another person with a significant relationship with the child," 33 V.S.A. § 5318(a)(7), the alternative placement order sought by parents if reunification with them could not occur within the specified time limits. The court can make such an order only based on findings "regarding the suitability of that person to assume legal custody of the child and the safety and appropriateness of the placement." Id. § 5318(e). Having adopted the findings from the temporary-care hearing, the court made clear

8

that it could not conclude that placement with grandmother was safe or appropriate or that she was a suitable custodian.

¶ 25. Mother accepted that conclusion as of the time of the disposition hearing, but argued that grandmother could become a safe and appropriate placement with proper services, essentially with a reunification plan as if she were a parent. We find nothing in the statute that suggests that such a disposition alternative would meet the permanency goal, especially in a case in which permanency already was excessively delayed. The trial court has discretion to reject the presentation of further evidence in support of a disposition alternative so obviously inconsistent with reaching a permanency goal within a reasonable period of time.

¶ 26. Like the trial judge, we find it troubling that this CHINS case was filed in June 2013, the merits decision was finally rendered on November 18, 2013, and the disposition hearing was not held until September 24, 2014, ten months after the merits determination and almost sixteen months after the filing of the case. Clearly the statutory requirement that a disposition hearing be held within thirty-five days after a finding that a child is CHINS was not satisfied. Id. § 5317(a). But we find no meaningful violation of the statutory hearing requirement or any violation of mother's due-process rights by the procedure employed by the court here. We affirm the trial court's decision not to allow additional evidence of grandmother's suitability.

¶ 27. Mother next argues, almost exclusively in her reply brief, that the court could not take judicial notice of its prior findings concerning grandmother in assessing her suitability as a custodian for A.M. According to mother, this practice is not allowed under Vermont Rule of Evidence 201. Mother cites Vermont case law and out-of-state cases that she believes support her position.

¶ 28. We conclude that mother waived this argument by failing to raise it below. As we have often repeated, "[t]o properly preserve an issue for appeal a party must present the issue

9

with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270-71 (2001) (quotation omitted). Mother did not challenge the court's reliance on its prior findings below; she accepted these findings and conceded that they raised valid concerns about grandmother. After the court had concluded the hearing and adopted the disposition plan, mother's counsel requested an evidentiary hearing "on new developments with respect to [grandmother]." This is not an objection to the validity of the existing findings about grandmother set forth above or to the court's decision to take judicial notice of those findings. "We will not consider any matter raised for the first time on appellate review." In re C.H. & M.H., 170 Vt. 603, 604, 749 A.2d 20, 22 (2000) (mem.); see also In re T.D., 149 Vt. 42, 45, 538 A.2d 176, 178 (1987) (affirming trial court's disposition order, which included findings based in part on disposition report that had been filed with court but never admitted into evidence, where parents raised no objection to procedure in trial court, and parents suffered no prejudice).

¶ 29.    Mother suggests that there is an exception to our preservation rule for judicial-notice arguments. Vermont Rule of Evidence 201(e) provides: "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." According to mother, this language allows her to raise her argument for the first time on appeal. Mother cites no case in which a court has reached such a conclusion. This argument is immaterial, in any event, as the trial court here expressly notified mother that it intended to take judicial notice of its prior findings. Mother had the opportunity to raise a timely objection below, and she failed to do so. She therefore failed to preserve this argument.

¶ 30.    Even if mother had preserved this argument, we would find it without merit. Rule 201(a) provides, in relevant part, that the court may take judicial notice of "adjudicative facts." "A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of

10

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." V.R.E. 201(b). "Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties." Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997).

¶ 31. At issue here is the court's recognition of findings made at an earlier stage of the same case. It is "settled . . . that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in previous trials or hearings." 2 K. Broun, McCormick on Evidence § 330 (7th ed. 2013); see also In re Brown, 374 N.E.2d 209, 211 (Ill. 1978) ("Clearly, a court may and should take judicial notice of other proceedings in the same case which is before it and the facts established therein."). "It is axiomatic that a party is not required to prove facts that a trial court judicially knows. A trial judge judicially knows what has previously taken place in the case on trial." Vahlsing, Inc. v. Mo. Pac. R.R. Co., 563 S.W.2d 669, 674 (Tex. Civ. App. 1978).

¶ 32. This does not mean that these facts will dictate the outcome of later proceedings within the same case, as different legal questions are presented at different stages of litigation. Nor does it preclude additional consideration of those issues. The question of whether a child is CHINS, for example, presents a very different legal question than whether the termination of a parent's rights is in a child's best interests. But the fact that a child has been determined to be CHINS, and the factual findings supporting that determination, are matters not subject to dispute and capable of ready determination. Many of the findings made at one stage of a juvenile proceeding will need to be updated to reflect parents' and children's current situation. Thus, if a court found that parents were homeless at the time of the CHINS order, for example, or addicted to drugs, that does not mean that parents are precluded from presenting evidence at a later proceedings that they are no longer homeless or addicted to drugs. But it is entirely proper for

11

the Court at that latter stage to judicially notice that the parents were, at an earlier time in the case, found to be homeless or addicted. The court need not turn a blind eye to its prior findings, mindful that parties also retain the opportunity, as set forth in Rule 201, to challenge "the propriety of taking judicial notice and the tenor of the matter noticed." V.R.E. 201(e). Judicial notice is the mechanism by which the court may incorporate or reference prior findings within the same case, and the court may consider judicially noticed findings in combination with new evidence, if any, in reaching its decisions.[1]

¶ 33. In addition to a treatise recognizing the appropriateness of such action, see K. Broun, supra, § 330, courts throughout the country have also found it appropriate to use judicial notice to incorporate, refer to, or rely upon findings made in juvenile cases at a later stage of the same proceeding. See In re Tanya F., 168 Cal. Rptr. 713, 7156 (Ct. App. 1980) (concluding that, in terminating mother's parental rights, trial court did not err in taking judicial notice of findings and orders in earlier dependency proceedings, explaining that "[a] court may take judicial notice of the existence of each document in a court file, but can only take judicial notice of the truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments"); In re O.J.S., 844 P.2d 1230, 1233 (Colo. App. 1992) (finding it appropriate for

---

[1] The concurrence suggests that courts should rely on issue preclusion rather than judicial notice in order to rely on findings made at an earlier stage of the same proceeding. Issue preclusion "bars the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." Berlin Convalescent Ctr., Inc. v. Stoneman, 159 Vt. 53, 56, 615 A.2d 141, 144 (1992) (emphasis added) (quotation omitted). "Under our rules, 'any order from which an appeal lies' is a judgment." Iannarone v. Limoggio, 2011 VT 91, ¶ 17, 190 Vt. 272, 30 A.3d 655 (quoting V.R.C.P. 54(a)). Even assuming that the doctrine of issue preclusion applies to final judgments within the same case, the concurrence does not explain why a temporary, nonappealable, interlocutory order such as the one at issue here is a "final judgment" and thus entitled to preclusive effect. See Hoffman v. Blaski, 363 U.S. 335, 340 n.9 (1960) (noting that res judicata did not apply where orders at issue "were (1) interlocutory, (2) not upon the merits, and (3) were entered in the same case by courts of coordinate jurisdiction"). Under the concurrence's theory, even if grandmother's circumstances changed dramatically during the course of these juvenile proceedings, she could never be considered a suitable guardian for A.M. That issue would be permanently foreclosed.

court to take judicial notice of record of two dependency and neglect actions concerning father's children that were consolidated for termination hearing, and stating that "[a] court may take judicial notice of its own file, its findings of fact, and its conclusion of law"); In re Ty M., 655 N.W.2d 672, 691 (Neb. 2003) (holding that court did not err in termination proceeding by admitting into evidence its own records and case plans in interwoven and dependent controversy); State v. Norwood, 277 N.W.2d 709, 711 (Neb. 1971) ("[A juvenile court] has a right to examine its own records and take judicial notice of its own proceedings and judgment in an interwoven and dependent controversy where the same matters have already been considered and determined."); Davis v. McMillian, 567 S.E.2d 159, 161-62 (N.C. Ct. App. 2002) (explaining that trial court may take judicial notice of findings from prior custody order regarding child); Raynor v. Odom, 478 S.E.2d 655, 657 (N.C. Ct. App. 1996) ("No decisions in North Carolina specifically indicate that it is improper for a trial court to use orders from temporary hearings . . . in the same case to support permanent custody orders. This Court has found that it is not improper for a trial court to take judicial notice of earlier proceedings in the same cause.").

¶ 34.   We reach a similar conclusion here. The trial court could properly consider the findings from the temporary-care order, by taking judicial notice of them, in assessing, for disposition purposes, grandmother's suitability as A.M.'s caretaker. The findings were made within the same case after a contested hearing. The findings were capable of ready determination simply by reference to the court's own file. Those findings were reflective of the state of the suitability of grandmother at the time they were made. No evidence was proffered to show that grandmother's situation had changed since the findings were made.

¶ 35.   While some courts are reluctant to take judicial notice of court records from one case to be used in a different case, this is not true of court records within the same case. See, e.g., 2 Broun, supra, § 330; see also 21B C. Wright & K. Graham, Federal Practice and

13

Procedure: Evidence 2d § 5106.4, at 228-29 (2d ed. 2005) (recognizing that, at common law, courts could notice their own records, and that writers and state drafters "generally agree that courts can take judicial notice of court records under Rule 201(b)(2)"). Courts that refuse to take judicial notice of findings of fact from a <u>different</u> case reason that such findings are not indisputable and that taking notice of findings would make the doctrine of res judicata superfluous "because a party in one case could not dispute any fact that was found true in another case, whether or not the party had any opportunity to litigate that fact." 21B Wright & Graham, <u>supra</u>, § 5106.4, at 235.

¶ 36.    Mother relies solely on cases where courts have taken judicial notice of court records from a case other than the one before the court. We are not here concerned with a court taking judicial notice of findings made in one case and then applying those findings in a separate case, and these policy concerns are not at issue here. Thus, we find the cases cited by mother unpersuasive here. See, e.g., <u>In re Estate of Leno</u>, 139 Vt. 554, 557, 433 A.2d 260, 262 (1981) ("It is improper for a court to take judicial notice of the files, records and judgment in a case <u>other than that on trial</u>." (emphasis added)), <u>abrogated by</u> <u>Jakab v. Jakab</u>, 163 Vt. 575, 578-79, 664 A.2d 261, 263 (1995) (stating that "broad statement of <u>Leno</u> goes too far" in light of procedural safeguards found in Rule 201, and finding it "improper to judicially notice the content of testimony in another proceeding," but finding error harmless under the circumstances); see also <u>In re Torres</u>, 2004 VT 66, ¶¶ 7-8, 177 Vt. 507, 861 A.2d 1055 (mem.) (distinguishing <u>Jakab</u> and finding it appropriate to take judicial notice of plea-hearing transcript in post-conviction relief (PCR) case because PCR proceeding and defendant's underlying criminal case were parts of same "case" for purposes of the record, and transcript was "exactly the type of document subject to judicial notice under our rules because it is an accurate record of sworn plea colloquy testimony"); <u>Fontaine v. Dist. Court of Vt.</u>, 150 Vt. 28, 30, 547 A.2d 1362, 1363-64 (1988) (stating that, in criminal-refusal case, court erred by taking judicial notice that defendant had

previously been convicted of driving under the influence (DUI) in order to find that defendant was person not unfamiliar with DUI processing procedure, although error was harmless); Walker v. Town of Newfane, 146 Vt. 212, 216, 499 A.2d 777, 779 (1985) (stating that "proceedings in another case may not be taken notice of by the court without affording both parties an 'opportunity to meet and explain' matters considered in the prior proceeding" (quotation omitted and emphasis added)); Gen. Elec. Capital Corp., 128 F.3d at 1082 n.6 (agreeing that "courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed," but finding it "conceivable that a finding of fact may satisfy the indisputability requirement of Fed. R. Evid. 201(b)"); Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992) (stating that court may not take judicial notice of document filed in another court to establish truth of matters asserted in case before it); Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 58 (D.D.C. 2010) (concluding that courts are not prohibited from taking judicial notice of "truth" of findings and conclusions of law in cases other than one on trial, but it is inappropriate absent some particular indicia of indisputability); City of Amsterdam v. Goldreyer, Ltd., 882 F. Supp. 1273, 1278-79 (E.D.N.Y. 1995) ("New York law is clear that a court may take judicial notice of a document filed in another court not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quotation omitted)).

¶ 37.    Our conclusion that the court acted properly here is consistent with our juvenile statutes.  Section 5315(d) of Title 33 provides that "a finding of fact made after a contested temporary care hearing based on nonhearsay evidence may be adopted by the [c]ourt as a finding of fact at a contested merits hearing provided that a witness who testified at the temporary care hearing may be recalled by any party at a contested merits hearing to supplement his or her testimony."  The assumption behind the statute is that temporary-care hearings occur before

15

merits hearings. While this is usually so, the case before us presents an exception where the temporary-care hearing comes after the merits hearing.

¶ 38. We see no barrier to applying the same principle here, as long as the findings of the temporary-care hearing were made under the same standard of proof applicable in the disposition determination. We consistently have held that a finding of fact made in a merits decision may be adopted by the court in a disposition determination unless the standard of proof required for disposition is higher than that actually employed in making the finding. See In re D.G., 2006 VT 60, ¶ 3, 180 Vt. 577, 904 A.2d 1206; In re J.T., 166 Vt. 173, 179-80, 693 A.2d 283, 287 (1997); In re C.K., 164 Vt. 462, 471, 671 A.2d 1270, 1275 (1995); In re J.R., 164 Vt. 267, 271, 668 A.2d 670, 674 (1995). Section 5315(a) of Title 33 specifically authorizes merits findings to be made to a standard of clear and convincing evidence in the court's discretion, rather than by the merits-required preponderance. The reason for this provision is so that those findings may, if appropriate, be incorporated into the findings made at a termination of parental rights hearing, where the applicable standard is clear and convincing evidence. If the Court could not take judicial notice of its earlier merits findings at the termination hearing, there would be no need to authorize the court to employ the higher standard of proof.

¶ 39. The legal standard for evaluating grandmother's suitability as a temporary custodian was also similar to the standard for placing the child with her at disposition. Both statutes require the court to find that grandmother could provide a safe and secure environment for A.M., with grandmother's ability to provide legal permanence also a factor. See 33 V.S.A. §§ 5308(b)(3)(A), 5318(e). The same burden of proof—a preponderance of the evidence— applied in both proceedings. In this particular case, the judicially noticed findings were essentially dispositive of the issue of grandmother's suitability, and the court reasonably concluded that any custody arrangement with grandmother would not provide A.M. with the permanence he needed. As previously noted, parents proffered no evidence that grandmother

16

had become a suitable custodian. If grandmother's circumstances did change and she demonstrated a new suitability, then mother could move to modify the disposition order.

¶ 40. Even aside from the judicial-notice issue, we fail to see any prejudice that mother suffered in this case. Mother had four days of evidentiary hearings to show why grandmother would be a suitable custodian for A.M. As previously noted, she identified no evidence at the disposition hearing or on appeal that would call any of the existing findings into doubt; she identified no new evidence below or on appeal to show that grandmother should now be considered a suitable custodian. Absent any new evidence, we can discern no harm that she suffered from the failure to hold another evidentiary hearing on grandmother's suitability. As the court noted, moreover, mother was free to move to modify the disposition order if reunification with parents seemed unlikely and if there was clear evidence that grandmother had a new suitability that the court did not find before.

¶ 41. Thus, under all of these circumstances, and assuming arguendo that mother preserved her arguments, the court did not err in incorporating the findings in its prior ruling here. The court appropriately declined mother's belated request to hold an additional evidentiary hearing on whether reunification with grandmother should be included as a "third goal." It acted in A.M.'s best interests in doing so. Given our conclusion, we need not reach DCF's argument that the law does not allow for three or more concurrent case plan goals. See 33 V.S.A. § 5316(b)(1) (providing that disposition case plan shall include, as appropriate, a permanency goal and it may also identify a concurrent permanency goal).

¶ 42. Finally, we find mother's assertion that the court's disposition order is "unsupported by any factual findings" without merit. The court issued a written disposition order reflecting that its findings and conclusion were based on factual stipulations and representations made by the parties at the hearing. As previously discussed, parents agreed with the disposition plan, with the exception of the issue involving grandmother, and they essentially

17

stipulated to the facts demonstrating their unfitness. The court made clear findings on the record with respect to the question of grandmother's inclusion in the disposition plan and with respect to the amendments it made to the proposed disposition plan. Contrary to mother's assertion, we find it evident "what was decided and how the decision was reached." In re M.B., 147 Vt. 41, 45, 509 A.2d 1014, 1017 (1986). We find no error.

Affirmed.

FOR THE COURT:

_____

Associate Justice


¶ 43. **DOOLEY, J, concurring.** I agree with the result of the majority decision and specifically agree with the part of the decision that holds that mother cannot challenge the trial court ruling to take judicial notice of the findings from the temporary-care hearing because she failed to make that challenge below. If the majority decision ended there, I would sign on to it. But the majority, in eleven paragraphs of dicta, has decided to approve of the trial court's use of judicial notice to adopt the findings from the temporary-care hearing. I believe that the dicta is wrong and take this opportunity to explain my rationale.

¶ 44. The concept of judicial notice is completely embodied in Vermont Rule of Evidence 201, a rule that is fully consistent with preexisting Vermont evidence law on the subject. Although the majority appears to accept the point that it must find authorization for its theory of judicial notice within Rule 201, its method of doing so is clearly inconsistent with the language of the rule. I believe it is important to allow judicial notice only in very narrow and clearly defined circumstances, as I explain in more detail below. I also believe that if we are going to allow judicial notice, our most important contribution in this decision is to explain when

18

and how findings made during one part of a juvenile case can be used in another, and the majority decision fails to do that. For these reasons, I dissent from the majority's rationale.

¶ 45. Before turning to the applicable law, it is important to understand the findings of fact in issue. As the majority states, the findings resulted from evidence presented over four trial days on the issue of whether the court should grant temporary custody of A.M. to the child's maternal grandmother. The thrust of the evidence was a presentation of the historical events and determinations that caused DCF to conclude that grandmother was not an acceptable custodian, followed by testimony of grandmother, mother, and mother's sister minimizing the events and determinations and often testifying that they never happened. The majority recounted one incident where the court could not find that grandmother committed the misconduct alleged by DCF. For most of the events, often based on determinations by the court or DCF at the time, the court did not find credible the evidence of grandmother, mother, or mother's sister. The court did not find credible grandmother's testimony that she had overcome her alcohol and drug abuse, and it found that grandmother was a regular user of marijuana.

¶ 46. While nothing in the hearing was unusual for a CHINS proceeding involving parents with a history of opiate addiction, the characterization of grandmother as a custodian was hotly disputed and involved evidence of child abuse, other domestic abuse, inadequate parenting, and alcohol and drug abuse stretching over many years. I start with the substance of the findings to make an obvious point. No one could make a serious claim that the facts found by a trial court could be judicially noticed except in a circumstance where the court has found them in another event in the case before the court. Further, if these facts can be judicially noticed, then any facts could be judicially noticed if they are found by the court at some time in the proceeding—the substance of the facts involved is generally irrelevant to the issue.

¶ 47. Three other preliminary points are important. Rule 201 opens in subdivision (a) with a statement of its scope: "This rule governs only judicial notice of adjudicative facts." This

19

statement conveys two policy judgments: the rule <u>does not</u> govern judicial notice of facts that are not adjudicative, and it <u>does</u> govern judicial notice of facts that are adjudicative. The first of these judgments is unimportant to this case because we are dealing only with adjudicative facts. The second of these judgments is my first preliminary point—judicial notice of adjudicative facts is governed by Rule 201 and nothing else. The majority seems to recognize this point, but not its full meaning. This point is important because judicial notice is a concept that is broadly invoked, often in circumstances that have little to do with the scope of the rule, or even the circumstances in this case. To the extent that judicial notice is invoked in circumstances that are not within the scope of the rule, it is a misuse of the term—a misuse that has undesirable consequences.

¶ 48. The second preliminary point is that, contrary to the decision of the majority, taking judicial notice does control how a fact can be used in a proceeding, at least in noncriminal cases. That is the subject of Rule 201(g): "In a civil action or proceeding, the court shall instruct the jury to accept <u>as conclusive</u> any fact judicially noticed." (Emphasis added.) While the language describes a situation where a jury is the factfinder, it also applies where a judge is the factfinder because the noticed fact binds the parties. 21B C. Wright & K. Graham, Federal Practice and Procedure § 5111.1, at 327 (2d ed. 2005) (discussing identical Federal Rule of Evidence 201(g)). It applies here. In essence, a finding made to determine temporary care of the child automatically becomes a finding with respect to whether grandmother should become the permanent custodian.

¶ 49. The majority suggests that both the decision to judicially notice a fact and the effect to be given that fact is discretionary because of the opportunity to contest contained in Rule 201(e). In fact, judicial notice is "mandatory" if a party so requests and the request is properly supported, essentially the situation here. V.R.E. 201(d). The majority's decision makes prior findings subject to judicial notice as a matter of law, eliminating any discretion in the decision. Rule 201(e) allows a party to contest the "propriety" of taking judicial notice and the

"tenor" of the matter noticed.  Propriety means whether the fact is indisputable.  21B Wright & Miller, supra, § 5109, at 287.  There can be no argument whether that standard is met under the majority's decision.  The issue of "tenor" is whether the fact to be noticed is the same as that in the source.  Id.  Again, argument about its presence is foreclosed.  The opportunity to contest judicial notice under the majority's theory is an illusion.

¶ 50.  The third preliminary point is that we have not held that a court can take judicial notice of earlier findings from another event in a proceeding in deciding a later disputed issue in the same proceeding.  In saying this, I recognize that the State sought such a holding in In re T.C., 2007 VT 115, 182 Vt. 467, 940 A.2d 706, where the State asked the trial court to judicially notice findings from involuntary medication and initial mental-health commitment proceedings to decide whether to order continued involuntary treatment.  We held that the court could judicially notice that it initially ordered hospitalization and that another court ordered the involuntary medication.  Id. ¶ 16.  We also affirmed the trial court's decision not to judicially notice any findings from either the initial commitment proceeding or the involuntary-medication proceeding.  Id. ¶¶ 15-16.  Indeed, our discussion suggested that the preclusive effect the State sought had to be based on principles of issue preclusion, exactly my position here.  Id. ¶ 18.  Again, my third preliminary point is that we have not decided the question presented here.  More specifically, we have never decided that the court can judicially notice findings from an earlier stage of a juvenile proceeding in order to determine an issue arising in a later stage.

¶ 51.  This brings me back to the requirements of Rule 201 as applied to facts found by the trial court at an earlier event in the proceeding.  Rule 201(b) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The first prong of Rule 201 is clearly inapplicable to findings of fact.  Facts established by findings from

21

evidence presented to the court are not facts "generally known," as that term is used in the rule. Facts "generally known" include, for example, matters of common knowledge, business practices, human or animal behavior, or laws of nature. Reporter's Notes to V.R.E. 201. That description would not apply to the past and present conduct and habits of grandmother, who is not a public figure.

¶ 52. Facts found based on evidence would fit only rarely under the second prong of Rule 201—where, for example, the court found that the Earth is round based on the testimony of a witness. While the findings of trial courts reflect a professional resolution of often-conflicting evidence, one could not place those facts beyond reasonable questioning. 21B Wright & Graham, supra, § 5106.4, at 234-35 ("[I]ntuitively judicial findings of fact seem different. This may explain why courts frequently get it wrong. While judicial findings of fact may be more reliable than other facts found in the file, this does not make them indisputable. . . . [M]ost courts agree that Rule 201 does not permit courts to judicially notice the truth of findings of fact."). Indeed, they are based only on the evidence before the judge in the context of a particular dispute. And of course, they often are questioned on appeal. The findings here are being questioned by mother, who is arguing that if she could put on new evidence she could demonstrate that at least part of the findings are inaccurate. Again, the past and present conduct of grandmother is not subject to "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

¶ 53. This prong clearly demonstrates the difference between the holding of T.C. and the extension of T.C. the majority adopts here. In T.C., we affirmed the trial court taking judicial notice of the prior orders of the court and the statutory elements on which they were based. 2007 VT 115, ¶ 15. The order and its content are capable of accurate and ready determination from the court records—the only source of such information and one "whose accuracy cannot reasonably be questioned." See 21B Wright & Graham, supra, § 5106.4, at 228. Similarly, the

fact that the court made certain findings of fact could be the subject of judicial notice. What is clearly outside the authorization of Rule 201(b)(2) is the substance of the facts found. Id. § 5106.4, at 234-35.[2]

¶ 54. The only way that facts found based on evidence become accurate beyond reasonable question is by making them so as a matter of law, turning the consequence of judicial notice—indisputability—into the reason why it is allowed, perfectly circular reasoning. Fundamentally, this is the reasoning behind applying judicial notice to use the earlier findings of fact here.

¶ 55. While it is important not to resolve this case on the inapplicable ground of judicial notice, it is even more important to resolve it on the right ground. Findings of fact can arise in many contexts, such as in response to a motion to continue by a party, in a decision on a motion seeking temporary relief, or in resolution of an earlier stage of a proceeding. It is fair and just that the findings should be conclusive in some of these instances but not in others. As a policy matter, the main drawback to using judicial notice as a way of determining whether a finding of fact from an earlier stage of a proceeding is conclusive in a later stage is that the nature of the issue in which the finding was made is irrelevant. Thus, a finding of fact in response to a motion to continue is just as conclusive as one made in a CHINS merits determination.[3]

---

[2] The majority cites this same source for its proposition that the court can take judicial notice of the substance of the facts found. In fact, the source draws exactly the distinction used in this concurrence—a court can take judicial notice that the facts were found earlier but not of their substance for reuse.

[3] The circumstance that a fact was found under a lower standard of proof and is being deemed conclusive on an issue for which there is a higher standard of proof is wholly consistent with the concept of judicial notice because the fact must be indisputable for it to be considered a subject of judicial notice under Rule 201. Thus, the standard of proof should make no difference where a fact is properly established by judicial notice. If a fact is "indisputable," it meets any standard of review including one requiring proof by clear and convincing evidence.

Without mentioning judicial notice, however, we have consistently held that a finding of fact made in a CHINS merits decision may not be adopted by the court in a disposition

23

¶ 56. Although we do not have a definitive ruling, there are two possible routes to allowing reuse of findings from earlier proceedings in the same case. The most common method is to allow reuse under the law-of-the-case doctrine, which applies when reuse is occurring in one case. See In re Carrigan Conditional Use, 2014 VT 125, ¶ 26 n.4, ___ Vt. ___, ___ A.3d ___; 18B C. Wright et al., Federal Practice and Procedure § 4478, at 646 (2d ed. 2002) ("Legions of cases, both in trial courts and appellate courts, illustrate law-of-the-case refusals to reconsider a matter once resolved in a continuing proceeding"). We have held that the law-of-the-case doctrine applies to findings of fact where there is no new evidence. See Halpern v. Kantor, 139 Vt. 365, 367, 428 A.2d 1132, 1134 (1981); 18B Wright et al., supra, § 4478.5, at 808 ("If an attempt is made to press the same fact issue on an unchanged record, law-of-the-case reluctance approaches maximum force."). It is a rule of practice, rather than one of law, and as a result the court has discretion to depart from it in the appropriate case. Thus, it is more flexible than judicial notice and can be shaped to avoid overuse. See Morrisseau v. Fayette, 164 Vt. 358, 364, 670 A.2d 820, 824 (1995). Thus, even though we have recognized that the law-of-the-case doctrine may not apply to findings of fact where new evidence is presented, "persuasive justification should be required to support consideration of the new evidence." 18B Wright et al., supra, § 4478, at 680-81; see also id. § 4478.1, at 695 (stating that where earlier ruling "has shaped later proceedings in ways that can be undone only at the cost of delay and duplicating expense, . . . the forward progress of the case discourages reconsideration"). The law-of-the-case doctrine fits the circumstances of this case.

---

determination where the standard of proof required for disposition is higher than that actually employed in making the finding. See In re D.G., 2006 VT 60, ¶ 3, 180 Vt. 577, 904 A.2d 1206; In re J.T., 166 Vt. 173, 179-80, 693 A.2d 283, 287 (1997); In re C.K., 164 Vt. 462, 471, 671 A.2d 1270, 1275 (1995); In re J.R., 164 Vt. 267, 271, 668 A.2d 670, 674 (1995). This is an example of where our jurisprudence on using prior factfinding in CHINS cases is inconsistent with the theory that findings of fact can be reused by judicial notice. We do not allow reuse under the higher standard because the finding is not actually "indisputable," despite the adoption of the fiction that it is.

¶ 57. The second possibility is issue preclusion. We have generally analyzed the preclusive effect of the outcome of one part of a juvenile proceeding on another based on the principles of issue preclusion, or collateral estoppel. In In re J.R., we analyzed whether findings and conclusions from a CHINS merits hearing had preclusive effect when the court went on to consider termination of parental rights. We used issue preclusion to determine the preclusive effect, holding that because the standard of proof was greater at the termination stage than at the CHINS merits stage, issue preclusion could not apply. 614 Vt. at 270-71, 668 A.2d at 673-74; see also In re A.S., 157 Vt. 487, 489, 599 A.2d 736, 737 (1991) (stating that collateral estoppel prevents attack on lack of CHINS disposition order where legality of state custody was resolved in earlier proceeding in same case). The fourth and fifth elements of issue preclusion are particularly relevant to this discussion. They are: "there was a full and fair opportunity to litigate the issue in the earlier action" and "applying preclusion in the later action is fair." In re P.J., 2009 VT 5, ¶¶ 8, 13, 185 Vt. 606, 969 A.2d 133 (mem.). Whatever the label, these are the types of considerations that should govern reuse of the substance of findings of fact.

¶ 58. The majority claims that issue preclusion is unavailable because of the lack of a final judgment as a result of the temporary-care hearing.[4] Put another way, the majority's opposition is because a temporary-care order is another event in one case, where issue preclusion involves the preclusive effect of a judgment in one case on the resolution of an issue in another case. This way of applying issue preclusion makes perfect sense for ordinary civil litigation.

¶ 59. We recently explained, however, in In re D.D., 2013 VT 79, 194 Vt. 508, 82 A.3d 1143, that "[i]n juvenile proceedings, finality is measured differently from other types of cases given the important rights at stake and the ongoing nature of the proceeding," and held that the determination of CHINS is a separate action from the disposition of the child for purposes of

---

[4] If an order is final, it resulted from a separate action for purposes of issue preclusion.

25

finality and the obligation to appeal. Id. ¶ 22. I also note the observation of the United States

Supreme Court in State of Arizona v. State of California, 460 U.S. 605 (1983):

> [W]hile the technical rules of preclusion are not strictly applicable, the principles upon which these rules are founded should inform our decision. It is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment. Nevertheless, a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive.

Id. at 619 (citation omitted).

¶ 60. Of all of the elements of issue preclusion, the one that has most evolved is the final judgment element. Thus, § 13 of the Restatement (Second) of Judgments provides that "for purposes of issue preclusion . . . , 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). We have adopted § 13, in part, in a related context, see Scott v. City of Newport, 2004 VT 64, ¶ 12, 177 Vt. 491, 857 A.2d 317, and have routinely relied upon this Restatement, see, e.g., OCS/Pappas v. O'Brien, 2013 VT 11, ¶¶ 20-21, 193 Vt. 340, 67 A.3d 916.

¶ 61. It is important to recognize that finality for purposes of issue preclusion under § 13 need not be the same as for the right or obligation to appeal. The "sufficiently firm" standard is not the same as that for determining whether an order is final such that it can be appealed. See In re Burlington Bagel Bakery, Inc., 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) (quotation omitted) (stating that order is final for purposes of appeal where it "conclusively determine[s] the rights of the parties, leaving nothing for the court to do but to execute the judgment" (quotation omitted)). Whether the temporary-care order involved in this case can be appealed is generally irrelevant because the disposition order will moot the temporary-care order and is likely to occur before any appeal of the temporary-care order could be decided. The absence of the realistic ability to appeal, as well-asserted errors in reaching the temporary care

order, can, of course, be grounds for a determination that applying issue preclusion in these circumstances would be unfair.

¶ 62.   I would hold that reuse of the findings in this case should be judged under the law-of-the-case standard because that doctrine clearly applies and decides this case.  I would leave for other cases to determine when principles of issue preclusion should be applied.

¶ 63.   I concur in the disposition of this case for two main reasons.  First, the adjudication involved in determining temporary custody clearly offered the parents and grandmother a full and fair opportunity to litigate the historical facts related to grandmother's qualifications as a temporary custodian.  Because all parties had legal representation and the relevant witnesses were fully examined and cross-examined in the four days of hearing, the findings can be reused under the law-of-the-case doctrine, and it was within the discretion of the trial court not to allow new evidence under the circumstances.

¶ 64.   There is another important reason why the standards are met.  Section 5315(d) of Title 33 provides that

> a finding of fact made after a contested temporary care hearing based on nonhearsay evidence may be adopted by the Court as a finding of fact at a contested merits hearing provided that a witness who testified at the temporary care hearing may be recalled by any party at a contested merits hearing to supplement his or her testimony.

Although the statute does not technically apply here, because the court was using findings from the temporary-care hearing to resolve a disposition option and not to determine whether a child is CHINS, it is a legislative determination that it is fair to reuse temporary-care findings in later stages of the proceeding.  It places the parties on notice of potential reuse and provides an additional incentive, if one is needed, to fully litigate the issues in the temporary-care hearing.  It underscores why the law-of-the-case doctrine is appropriate in this circumstance.

¶ 65. It is unfortunate that the majority has decided to wander unnecessarily into the subject of judicial notice of the substance of findings of fact in dicta. In my judgment the unintended consequences of its decision will be undesirable and prevent the proper analysis of when the substance of findings should be reused. While I concur in the judgment, I dissent from the alternative holding affirming the trial court's use of judicial notice.

¶ 66. I am authorized to state that Justice Robinson joins this concurrence.

_____
Associate Justice