NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 38

No. 2015-424

| | |
|---|---|
| In re D.S., Juvenile | Supreme Court |
| | On Appeal from Superior Court, Caledonia Unit, Family Division |
| | March Term, 2016 |

Howard A. Kalfus, Acting Superior Judge, Specially Assigned

Matthew Valerio, Defender General, and Sarah Star, Appellate Defender, Montpelier, for Appellant Mother.

Michael Rose, St. Albans, for Appellant Father.

William H. Sorrell, Attorney General, and Benjamin D. Battles, Assistant Attorney General, Montpelier, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Mother and father separately appeal from a family court judgment terminating their parental rights to the minor D.S. Both parents contend the court erred in: (1) failing to hold an evidentiary hearing on the issue of whether to transfer custody of D.S. to the State following his birth; and (2) barring relitigation of factual findings from an earlier CHINS adjudication concerning D.S. and termination-of-parental rights proceeding concerning D.S.'s siblings. Father also contends the court erred in terminating his parental rights based on factors beyond his control. We affirm.

¶ 2.    In March 2014, a CHINS petition as to D.S. was filed shortly before his birth based on the parents' pattern of neglect of his older siblings.  The court issued a temporary emergency care order on March 21, 2014, ordering that D.S. be taken into custody by the Department for Children and Families.  D.S. was born a few days later, on March 24, 2014, and the court held a hearing on March 26, 2014.[1]

¶ 3.    Counsel for both parents were present at the hearing.  The State requested continued custody of D.S. and placement with a foster family in the same town where two of his siblings were placed.  Counsel for both parents argued for a conditional care order placing D.S. with mother, citing the importance of her bonding with the newborn.  Mother's attorney noted that she had been in discussions with DCF, stated that mother had "fashioned a plan which we could probably discuss with DCF after this hearing," and later explained that the plan involved mother spending time with D.S under the supervision, and with the assistance of, a variety of child care providers and social service agencies, including Family Time and Children's Integrative Services.  The court and the parties also discussed the possibility of a Lund placement, assuming that mother was willing to apply.

¶ 4.    The court agreed with parents on the need for contact, and indicated that it would hold a contested evidentiary hearing if parents wished, but declined to issue a conditional care order placing the child with mother, citing the lack of success of prior conditional care orders involving D.S.'s siblings.  The court expressed its strong expectation, however, that DCF would ensure that D.S. had regular contact with mother until an alternative was found.  An order issued by the court that day maintained custody with the State, and directed DCF to make a referral to Lund if mother was willing.  The court noted that a further pre-trial conference was scheduled in

---

[1]  In a separate decision affirming the CHINS adjudication of D.S. we concluded that it was unnecessary to reach the issue of the court's jurisdiction to issue an emergency care order prior to the birth of the child, finding that any error was rendered moot by the birth of the child and subsequently issued orders.  In re D.S., No. 2015-029, 2015 WL 3767188, at *1 (Vt. June 16, 2015) (unpub. mem), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx.

two weeks, and informed counsel that "if you want to contested (sic) conditional care order, you can let me know."

¶ 5.     A number of status conferences and preliminary hearings followed in which mother's attorney withdrew and a substitute attorney was appointed.  A case plan filed in September 2014 noted that mother had refused to complete the Lund application or visit the facility.  At no time following the March 26, 2014 hearing did either parent request a contested evidentiary hearing on the conditional care order.

¶ 6.     Over the course of several days in September and October 2014, the court held a combined merits hearing as to D.S. and termination-of-parental-rights hearing as to his four older siblings.  In January 2015, the court issued a written decision adjudicating D.S. to be CHINS, by clear and convincing evidence, based largely on the lengthy record of the parents' neglect of D.S.'s siblings, their inability to maintain a home free from extreme filth and safety risks, mother's failure to address her extensive mental health issues, and both parents' extensive history of substance abuse.  The court also issued a separate order terminating mother's and father's parental rights to the older children.  This Court affirmed both orders.  In In re D.S., 2015 WL 3767188, at *4; In re L.W., No. 2015-028, 2015 WL 3756796, at * 5 (Vt. June 12, 2015) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpusblishedeo.aspx.

¶ 7.     We note that the D.S. decision addressed in a limited way the temporary care order issued on March 26, 2014.  Mother argued that the failure to award her custody under the temporary care order "deprived her of a fundamental right." 2015 WL 3767188, at *3.  In response, we stated that the placement was not part of the appeal and had not been appealed separately.  We declined to consider it. Id.

¶ 8.     In February 2015, DCF filed a disposition plan with an initial goal of adoption, citing mother's refusal to complete the Lund application, to participate in other recommended services, and to maintain regular visitation.  The plan also indicated that father had failed to

3

utilize services or develop skills to properly parent D.S. The court held a termination-of-parental rights hearing over the course of three days in October 2015. Prior to the hearing, the court granted the State's motion in limine, ruling that the findings from the combined TPR/CHINS proceedings were made by clear and convincing evidence and "[t]hose facts will not be relitigated."

¶ 9. At the conclusion of the hearing, the court entered findings on the record. The court found, in summary, no evidence that mother had made any progress in addressing her mental health and substance abuse issues. Neither parent had visited the child consistently, and neither had taken advantage of parenting services and educational opportunities. Father had not obtained suitable housing. Based on these findings, the court concluded that neither parent could resume parental responsibilities within a reasonable time measured from the perspective of a young child's paramount need for permanence. The child, in the interim, had adjusted well to his foster home and community. Accordingly, the court concluded that termination of parental rights was in the child's best interests. These appeals followed.

¶ 10. Both parents contend the trial court violated their due process rights by improperly failing to hold a contested evidentiary hearing at the temporary care hearing in March 2014. They assert that this omission resulted in irreparable injury to the parental bond and made termination of parental rights unavoidable. The State has not argued that this argument has come too late in the process for us to consider it.[2]

_____

[2] The State has not contested parents' ability to raise this argument at this time and, as a result, we have considered the merits of it; we do not affirm, however, that this argument is properly before us at this time. In the appeal on the merits, we held that the issue was not properly before us because there was no separate appeal from the temporary care decision and that decision was not part of the merits appeal. In re D.D., 2013 VT 79, ¶ 29, 194 Vt. 508, 82 A.3d 1143, we held that that a CHINS merits decision is a final order that must be timely appealed or the issues resolved in it are finally adjudicated and cannot be later challenged. A major reason for the decision was to prevent issues from being raised late in the judicial process and undoing all that went before in the judicial process with a major adverse impact on the child. Id. ¶ 26. One of the decisions from other jurisdictions we relied upon was In re Shamika F., 773

¶ 11. The record does not support parents' claim. As noted, both parents were represented by counsel at the hearing. Mother's attorney explained that D.S.'s removal had been anticipated for some time, and that the parties had been in discussions with DCF about possible options to maintain contact with mother and the Lund program in particular. After hearing from counsel for both parents, the court indicated that it planned to continue custody with DCF because it did not consider placement with mother to be a viable option, but stated that "if you want a hearing on it, fine." Neither attorney responded in the affirmative, however, and neither asked to submit any evidence at the hearing or sought to call any witnesses. At the conclusion of the hearing, the court observed that another hearing was scheduled in two weeks, and again stated that if counsel wanted a "contested" hearing to "let me know." Neither party requested such a hearing at the time, at the subsequent conference in April 2014, or at any time thereafter.

¶ 12. In light of the record showing that neither parent objected to the court's failure to take evidence or sought to introduce evidence at the hearing or at any subsequent hearing, we find no basis for parents' claim. See State v. Ovitt, 2005 VT 74, ¶ 13, 178 Vt. 605, 878 A.2d 314 (mem.) (noting that party must raise objection below with specificity and clarity to ensure that trial court has fair opportunity to consider matter). Parents' additional contention that an evidentiary hearing was statutorily required is not supported. Under 33 V.S.A. § 5307(f), "[a]ll parties shall have the right to present evidence," but nothing in the statutory scheme requires it.

¶ 13. Parents further contend that the court erred in granting the State's motion in limine. Mother asserts that she was denied due process by being prevented from presenting evidence relating to events leading up to D.S.'s birth, and from relitigating the issue of her ability to parent D.S. at the time of his birth. Father additionally claims that he was denied a full and fair opportunity to litigate the issues at the earlier proceeding.

_____

A.2d 347, 361 (Conn. 2001), which held that a temporary care order had to be appealed immediately and could not be challenged at termination of parental rights. Whether immediately or as part of the merits appeal, the parents should have raised this challenge earlier.

¶ 14. We have held in dicta that a court may take judicial notice of facts previously found by the court in an earlier child-protection proceeding in the same case. See In re A.M., 2015 VT 109, ¶ 34, ___ Vt. ___, 130 A.3d 211 (holding that, in ruling on child's placement at disposition hearing, court may take judicial notice of findings of fact from earlier temporary care hearing concerning suitability of child's placement with grandmother). We note that this case is different from A.M. because here the appeal issue involves parents' ability to relitigate facts found in the merits decision that resulted in a final appealable order.

¶ 15. We need not decide the effect of A.M. on this case because parents are not contesting the reuse of merits findings but instead are interpreting the court's order that the "facts [would] not be relitigated" as preventing them from providing evidence of mother's fitness to have custody of D.S. We read the ruling differently.[3] We conclude that the court essentially ruled that it would take notice of, and rely on, the prior factual findings concerning parents' history of neglect of D.S.'s siblings, substance abuse, and failure to engage in services prior to D.S.'s birth. Its ruling did not preclude parents from introducing additional evidence relating to the issue of their ability to parent the child.

¶ 16. Our reading is supported by the evidence that was actually introduced. Although mother asserts that she was specifically precluded by the court's order from introducing evidence about her circumstances just before D.S.'s birth and her efforts to piece together the service plan to which her attorney alluded at the March 26, 2014 hearing, the record does not support the claim. In her direct testimony, mother was asked about her circumstances at the time of D.S.'s birth and testified without objection that she believed she was "successfully reintegrating . . . into the community." She testified that she was participating in a family group called the "Rocking

---

[3] A good deal of the confusion was caused by the motion in limine which sought "an order granting the admissibility as substantive evidence the Findings of Fact contained within the [termination and CHINS decisions]." It went on to argue that the findings were law of the case or collateral estoppel. No doubt the inconsistency between the requested action and the theories to support the action explains the differences in perceptions of the decision of the court.

Horse" group for families affected by substance abuse, was receiving home support through Children's Integrated Services and prenatal care through Women's Wellness, was an "active participant in the Smart Team up until D.S.'s birth" which helped mothers in recovery, and had signed up for early-child support through the Head Start program. Mother cites nothing in the record to show that she was prevented from introducing any other evidence relevant to the issue of her ability to care for D.S. when he was born or later. Furthermore, although the joint proceeding technically involved a different case involving several of D.S.'s siblings, both parents were represented, and the facts on which the court relied were based on findings that were largely common to both the TPR and the CHINS proceedings and decisions. Father's additional claim that he was not afforded a full and fair opportunity to litigate at the earlier hearing is not supported by the record, which shows that the joint proceedings involved an evidentiary hearing over the course of five days, and that both parents were represented and presented evidence.

¶ 17. Accordingly, we find that parents were not precluded from introducing the evidence they say was excluded. We find no error.

¶ 18. Parents additionally claim that the court's decision to terminate their parental rights was based on factors beyond their control. To the extent that the claim is based on the court's failure to take evidence at the temporary care hearing in March 2014, the argument—as noted—was waived by the failure to object or proffer evidence. Mother's assertion that the State effectively prevented her from forming any meaningful parental bond is contradicted by the evidence and findings showing that mother failed to cooperate with the Lund placement that would have reunited mother with D.S. early in his life, and by her subsequent failure to take full advantage of the opportunities provided for regular visitation. Father also asserts that his failure to maintain consistent visitation with D.S. was based on his work schedule, and that the court failed to consider whether DCF should have accommodated him. Father testified, and the court found, that there was a period when father missed visits because he was working, but the court

7

further found that father missed multiple visits for extensive periods at other times; that father had failed to obtain stable housing suitable to accommodate the child; and that both parents had failed to engage in parenting services sufficient to independently parent the child. These findings formed the basis of the court's conclusion that father could not resume parental responsibilities within a reasonable period of time, and were sufficient to support the judgment. See In re T.R., 163 Vt. 596, 597, 653 A.2d 777, 779 (1994) (mem.) (noting that we will not reverse for erroneous or unsupported finding where other evidence and findings are sufficient to support judgment).

Affirmed.

FOR THE COURT:

_____

Associate Justice

8