*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-459

APRIL TERM, 2016

In re T.P. and D.P., Juveniles

} APPEALED FROM:
}
} Superior Court, Franklin Unit,
} Family Division
}
} DOCKET NO. 45/46-4-14 Frjv

Trial Judge: Howard A. Kalfus, Acting
Superior Judge, Specially Assigned

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal from a family court order terminating their parental rights to the minors T.P. and D.P. Father contends the court erred in: (1) failing to hold a disposition hearing or issue a disposition order; and (2) requiring father to submit clean drug tests as a condition of child visitation. Mother contends the court erroneously failed to set forth a rational basis for its decision. We affirm.

A CHINS petition was filed in April 2014, alleging that the children, then three and one years old, were in need of care and supervision based on parents' chronic substance abuse and incidents of domestic violence. A temporary care order initially placed the children with their paternal grandmother, but her inability to care for them resulted in their placement with their maternal grandmother and her husband—both licensed foster parents—where they have since remained.

In July 2014, mother stipulated to an adjudication of CHINS. Father's counsel noted at the CHINS hearing that father had "de facto" not been involved in parenting the children because of a "no contact order." A disposition plan was filed with the court in September 2014, which identified concurrent goals of reunification or, if unsuccessful, termination of parental rights and adoption. The plan set forth a number of goals and services for both parents that included substance abuse assessments and treatment, drug testing, participation in individual and team meetings with the Department for Children and Families as scheduled, and maintaining safe and stable housing free of drugs and domestic violence. Mother was to follow a consistent child-visitation schedule. Father was to contact "All About Kids," a supervised visitation program, to establish a visitation schedule, and was to attend all scheduled visits and team meetings.

In late September 2014, the court held a hearing to review the plan with the parties. Father's attorney stated that he had not received timely notice of the hearing, and asserted that the plan contained a number of factual errors. The court, accordingly, continued the matter to December 2014 to afford father an opportunity to prepare for a contested disposition hearing.

At the hearing in December 2014, the court announced that other matters precluded an evidentiary hearing that day, but that it would reschedule the matter for a contested hearing if either party requested one. Father's attorney indicated that he would consult with his client and agreed to file written objections by early January 2015. The court then heard argument from counsel about the plan, and was further informed that father had failed to attend several meetings designed to establish a parent contact schedule and that mother had failed a number of drugs tests in the last several months. After further discussion, the court agreed to a proposal by the children's attorney that visits from both parents be conditioned upon their submitting a clean drug test. The children's attorney had initially suggested a clean test within twenty-four hours of each visit. With respect to the proposal, father's attorney stated that "it should work" but expressed concern about getting the results that expeditiously. The court ultimately ordered that the tests be provided two days before scheduled visits.

Father's one-page filing in January 2015 set forth his objections to the disposition plan by citing to several pages and lines in the disposition report that he claimed were inaccurate. He also objected to the need for supervised visits. The court scheduled a contested disposition hearing for late March 2015, but the State filed a TPR petition in the interim. The court held a hearing in late March 2015 to establish a discovery schedule on the pending TPR and to address mother's motion to enforce visitation. Father's attorney was present at the hearing, explained that father had been incarcerated for a period in January and February 2015, and noted that a meeting with DCF was scheduled "in the near future" to discuss father's parent contact schedule. The court held a further status conference in July 2015, where father's attorney indicated that father was currently incarcerated but otherwise confirmed that he had no other matters to raise at that time.

An evidentiary hearing on the TPR petition was held over the course of three days in October and December 2015. Without objection, the court stated that it would consider the matter to be a TPR at initial disposition given the absence of any actual disposition order in the record. At the conclusion of the hearing, the court entered findings and conclusions on the record. As to father, the court found, in summary, that he had had very little contact with the children since they came into DCF custody. Indeed, he had not seen them at all since December 2014, a year earlier, and had not engaged with DCF in any meaningful fashion. Applying the best-interests criteria, the court found that father's interactions and interrelationship with the children was "virtually nonexistent," that he had not played a constructive role in their lives, and that—measured from the perspective of the children's need for permanence and stability—he could not resume parental responsibilities within a reasonable time. As to mother, the court found that there had been "a great deal of inconsistency" in her attendance at scheduled visits with the children and counseling, which had decreased over time; that she had demonstrated emotional support and affection "when you were there" but that her inconsistency had limited the role she played in the children's lives; and that there was little likelihood she could resume parental responsibilities within a reasonable time. The court also found that that the children had since adjusted well to their foster placement in their maternal grandmother's home and community. Accordingly, the court concluded that termination of parental rights was in the best interests of the children. These appeals followed.

Father contends the court violated his statutory and constitutional rights by failing to hold a contested disposition hearing, and by relying on a case plan that had not been adopted. Although several continuances in this case delayed the disposition hearing to the point that it merged into the TPR hearing, the statutory timeframe for a disposition hearing is not mandatory, In re D.D., 2013 VT 79, ¶ 24, 194 Vt. 508, and the statutory scheme authorizes the termination

2

of parental rights at initial disposition. 33 V.S.A. §5318(a)(5); see also In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29 ("The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests."). Nor does the record support father's claim that the court improperly relied on the case plan despite the fact that his objections to the plan were never heard or resolved. The court's findings and conclusions show that the decision to terminate father's parental rights was based substantially on his nearly "nonexistent" contact with the children, which was due largely to his periodic incarcerations, failure to comply with the drug-testing condition, and general failure in any way to "keep abreast" of what was happening in the children's lives. Although the delay in holding a timely disposition hearing was not optimal, under the circumstances presented here we find no error.

Father also asserts that the court erred in requiring him to submit clean drug tests prior to visits with the children. The record shows, however, that father raised no objection to the need for testing at the time the court imposed the requirement or at any time thereafter. Accordingly, we find no merit to the claim. In re A.M., 2015 VT 109, ¶ 28 (to preserve issue for review, party must raise it with trial court with sufficient specificity and clarity to provide fair opportunity to address it).

Mother contends the court improperly "failed to explain the rational basis for its decision." She asserts, more specifically, that she deserved an "explained answer" as to why the benefits outweighed the costs of termination in light of the evidence that she was important to both children and that tension between mother and the foster mother made continued contact with the children problematic. The court's responsibility is to review the evidence in light of the statutory best-interests criteria and to explain "what was decided and how the decision was reached." In re M.B., 147 Vt. 41, 45 (1986). The court here did so here. Although the court acknowledged that mother's visits with the children had been positive, it concluded that her attendance was too infrequent to play a significant role in the children's lives or to support a conclusion that she could resume parental responsibilities within a reasonable time. We thus find no error.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice