VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     25-AP-361

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2026

In re S.B., Juvenile
(T.C., Father\*)

}    APPEALED FROM:
}
}    Superior Court, Chittenden Unit,
}    Family Division
}    CASE NO. 23-JV-01006
      Trial Judge: Kate T. Gallagher

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights to juvenile S.B., born in March 2010. On appeal, father argues that the court's failure to enforce visitation with S.B. prevented father from repairing his relationship with S.B. and being able to assume parenting duties within a reasonable time.  We affirm.

The court found the following after an evidentiary hearing.  After birth, S.B. lived with mother and had parent-child contact with father every other weekend and on holidays.  S.B. did not like spending time with father and would refuse to get into father's car for visits.  In October 2021, when S.B. was eleven, mother tragically passed away.  S.B. contacted his maternal aunt, who had been part of his life since birth.  When father was told of mother's death, father initially indicated he did not want to raise a child.  Police later contacted S.B.'s aunt and indicated that father was angry and wanted S.B. returned to him.  The aunt told police that father could come pick up S.B.  S.B. was distraught and did not want to go with father.  Father went to the aunt's home and engaged in a two-hour rant, threatening to kill the aunt and expressing suicidal and homicidal thoughts.

S.B.'s aunt and uncle then sought custody of S.B.  Abuse-and-neglect proceedings were initiated and proceeded in New Hampshire, but that state eventually ruled it did not have jurisdiction.  In July 2023, the State of Vermont filed a petition alleging that S.B. was a child in need of care or supervision (CHINS).  The court granted custody to the Department for Children and Families (DCF), and S.B. remained in his placement with his aunt and uncle.

In March 2024, father stipulated that S.B. was CHINS-C (beyond the control of his parents) due to S.B.'s unwillingness to be in father's care because of his concerns about father's mental stability.  DCF's initial case plan proposed a goal of reunification with father and called

for father to engage in a mental-health evaluation, follow treatment recommendations, execute releases, and engage in parenting classes. The court also had a family forensic evaluation completed. The doctor's report found that father's mental-health history was suggestive of paranoia and father's behaviors had alienated S.B. from him. The doctor recommended that parent-child contact be discontinued until father engaged in mental-health treatment and took responsibility for his threats to S.B. and the aunt and uncle. DCF's plan continued to call for reunification. The State objected. In October 2024, following a hearing, the court rejected the goal of reunification and ordered DCF to submit a revised disposition plan.

Father also engaged in a psychological evaluation. The doctor diagnosed father with moderate depression and a tendency toward obsessive ruminations. He found father's ability to engage in interpersonal relationships was impaired, and when threatened, father exhibited pathological traits. The doctor recommended that father engage in Dialectical Behavioral Therapy to address his mental-health issues and estimated it could take up to two years to be successful. In November 2024, the State filed a petition to terminate father's parental rights.

Following a hearing, the court examined the statutory best-interests factors and determined that termination at initial disposition was in S.B.'s best interests. As to S.B.'s interactions and interrelationships, the court found that father did not have a strong relationship with S.B. and had been unable to get past his own grievances and focus on developing a positive relationship with S.B. During visits, father spoke over people and had trouble engaging in positive interpersonal communications. Father had not engaged in mental-health treatment even though he had known of the need since at least 2022. In contrast, S.B. was strongly bonded to his foster family and particularly close to his aunt. As to S.B.'s adjustment to his home, school, and community, S.B. made remarkable progress while in his aunt and uncle's care, resolved issues with hygiene and eating, made friends, and was doing well in school and extracurricular activities. Father would not be able to assume parental duties within a reasonable time. Father required sustained mental-health treatment, but he had not begun to do that work, and instead blamed S.B.'s aunt and uncle. Father remained estranged from his son, who had been living with his aunt and uncle for almost four years. Finally, father did not play a constructive role in S.B.'s life. He threatened S.B., S.B.'s aunt and uncle, and caused S.B. significant distress. Father appeals.

The family court may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests. In re J.T., 166 Vt. 173, 177, 179 (1997). In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114. The most important factor is whether the parent will be able to resume parenting duties within a reasonable time. In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

Father argues that the family court's failure to enforce contact with father prevented father from demonstrating that his relationship with S.B. could be repaired and that father could resume parenting within a reasonable time. To the extent that father contends that S.B. was allowed to dictate whether to attend in-person or virtual visits and this resulted in an unlawful delegation of the court's authority, father failed to raise this argument below and has therefore not preserved it for appeal. See In re A.M., 2015 VT 109, ¶ 28, 200 Vt. 189 (explaining that to properly preserve argument for appeal, party "must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule" (quotation omitted)).

2

Moreover, the record does not support father's argument that his inability to reunify with S.B. was caused by factors beyond his control, including S.B.'s refusal to engage in contact with father. The evidence supports the court's finding that father would not be able to resume parenting within a reasonable time and that this was caused by factors within father's control. A court-ordered family forensic evaluation concluded that father's own behavior caused his alienation from S.B. and recommended that parent-child contact discontinue until father engaged in mental-health treatment. A psychological evaluation of father also indicated that father needed to engage in behavioral therapy to have a successful relationship with S.B. Father had not yet begun the recommended mental-health treatment or behavioral therapy. This evidence supports the court's finding that father's own actions caused his estrangement from S.B. and that he would not be able to assume parental duties in a reasonable time, given S.B.'s long period of custody and the work that remained for father.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Nancy J. Waples, Associate Justice